## Boring *v.* Metropolitan Edison Company, Appellant.

514

Argued May 26, 1969.   Before BELL, C. J., COHEN,
EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*John S. McConaghy,* with him *Samuel B. Russell,
Samuel S. Laucks, Jr.,* and *Ryan, Russell & McConaghy,* and *Laucks & Monroe,* for appellant.

*J. Ross McGinnis,* with him *Gilbert G. Malone,* and
*Stock and Leader,* for appellees.

OPINION BY MR. JUSTICE EAGEN, October 9, 1969:

This is an appeal by the Metropolitan Edison Company (hereinafter Condemnor) from the judgment entered in the court below upon a jury's verdict awarding $25,000 in damages to Paul L. Boring and Mary M. Boring (hereinafter Condemnees) in an eminent domain action.

On November 22, 1965, the Condemnor condemned a right of way across the unimproved 43.46 acre tract of the Condemnees for the purpose of erecting thereon an electrical transmission line. The Condemnees' land is located in close proximity to Pinchot State Park, a resort attracting large numbers of patrons to its water and park facilities. Along the road boundaries of the Condemnees' property, a small number of lots have been sold, on which modest homes are erected. Although the tract is otherwise unimproved and essentially agricultural in nature, a grass airplane landing strip had been created on it by the York County Sky Divers Association in 1965 by virtue of a written lease to it from the Condemnees. The lease was dated December 14, 1964, and ran for a period of 20 years, at a rental of $1.00 for the first year; $2,400.00 for the second year; $3,600.00 for the third year; $4,800.00 for the fourth year; and $5000.00 for the fifth and each succeeding year. The strip was used by members of the lessee in the summer and fall of 1965 for the taking off and landing of airplanes in pursuit of their sport of sky diving. The lease also reserved the joint use of the landing strip to the lessors and anyone else who might erect homes on the remaining portion of their property. The right of way in question was taken by the Condemnor by a resolution adopted on March 12, 1965, effective as of November 22, 1965. It (the right of way) contained 2.94 acres, and consisted of a strip 200 feet wide running for a distance of approximately 639 feet roughly across the center of the Condemnees' land and almost directly bisecting the landing strip.

By letter dated October 29, 1965, the Sky Divers Association terminated its lease because of the imminence of the condemnation which would make impossible the use of the land leased as an airstrip.

At the trial, both sides presented expert testimony by two valuation experts. The Condemnees' experts testified that the highest and best use of the property was as a sky park or sky port development because of the uniqueness of the terrain and the advantage of its location near Pinchot State Park between York and Harrisburg. A sky park was described as a type of residential building development on which substantial homes are erected from and to which the residents may fly their own planes, using the adjacent landing strip communally.

Taking into consideration this highest and best use, the general potential of the land for air-related uses and the lease to the Sky Divers, the Condemnees' experts gave their opinion of the market value of the property before condemnation as being $116,000 and $114,792 and the value thereof after condemnation as $32,000 and $27,867 respectively with consequent damages of about $86,000. The testimony of the Condemnor's experts was that the highest and best use of the property both before and after the condemnation was as a site for mobile homes or a trailer park with the possibility of the sale of lots for cottage-type homes. Their opinion of market value before condemnation was $26,000 and $28,200 and the market value after condemnation was fixed at $22,600 and $24,600 respectively, resulting in damages of $3800 or $3600.

The Condemnor first contends that the evidence presented by the Condemnees was inadequate as a matter of law to support a finding by the jury that the highest and best use of the land involved prior to condemnation was as a sky park or sky port, in that it failed to establish a need or demand for such purposes in the locality involved. In regard to the issue of need or demand in the locality, the Condemnor cites *Shillito v. Metropolitan Edison Company*, 434 Pa. 172, 252 A. 2d 650 (1969), and *Pa. Gas & Water Company v. Pa. Turnpike Commission*, 428 Pa. 74, 236 A. 2d 112

(1967). This assignment of error is presented here for the first time and was never raised in the court below. Under such circumstances, we will not consider it. *Glass v. Freeman,* 430 Pa. 21, 240 A. 2d 825 (1968).

The Condemnor next contends that the instructions of the trial court to the jury were inadequate on the issue of the highest and best use. The record discloses not only that the Condemnor entered neither a special nor a general exception to the charge, but also that at the end thereof, when invited by the court to request additional instructions, replied, "I have no further requests." Additionally, and very significantly, this assignment of error was not asserted in the court below in Condemnor's motion for a new trial. Hence, this issue is likewise raised belatedly.

The Condemnor next contends that the valuation methods used by the Condemnees' valuation experts were improper in respect to their treatment of the rentals provided for in the Condemnees' lease to the sky diving club. Both of the Condemnees' experts testified that they took the gross income of some $90,000 receivable over the twenty-year period of the lease which had been terminated because of the imminence of condemnation and applied thereto a 40% discount rate to reduce the gross income figure to its present value and thereby assigned a specific value of $54,000 to the leased portion of the premises, which $54,000 was included as a constituent element of their before-condemnation market value of the premises as a whole. The thrust of the Condemnor's contention is that the effect of such testimony was to treat the rentals reserved in the lease as a separate, recoverable item of damage and that the jury should have been instructed that while the rent reserved in the lease was a proper factor to be considered in arriving at the fair market value of the property, it was not to consider this tes-

timony of the Condemnees' witnesses as evidence of a separate item of value which was lost by virtue of the condemnation.

Section 705 of the Eminent Domain Code, Act of June 22, 1964 (Spec. Sess.) P. L. 84, Article VII, §705, 26 P.S. 1-705, which is here applicable, provides in part as follows: "(2) A qualified valuation expert may testify on direct or cross-examination in detail as to the valuation of the property on a comparable market value, reproduction cost or capitalization basis, which testimony may include but shall not be limited to the following: . . . (ii) The rent reserved and other terms of any lease of the condemned property or comparable property which was in effect within a reasonable time before or after the date of condemnation. (iii) The capitalization of the net rental or reasonable net rental value of the condemned property, including reasonable net rental values customarily determined by a percentage or other measurable portion of gross sales or gross income of a business which may reasonably be conducted on the premises, as distinguished from the capitalized value of the income or profits attributable to any business conducted thereon."

In *Westinghouse Air Brake Co. v. Pittsburgh*, 316 Pa. 372, 176 Atl. 13 (1934), we held that there was no error in admitting in evidence the actual rent received for the property as reflecting on its market value though it was not admissible as an independent item of damage. Section 705(2)(ii) of the Eminent Domain Code (supra) now expressly provides that a valuation expert may testify as to the "rent reserved and other terms of any lease of the condemned property." In the comment thereto of the Joint State Government Commission it is stated that while the admission of a lease in evidence under prior law was held to be forbidden in *Olson & French, Inc. v. Commonwealth*, 399 Pa. 266, 160 A. 2d. 401 (1960), this subclause changes

the prior law in this regard. In the instant case the lease itself was properly admitted in evidence. Therefore, the fact that the Condemnees' experts testified as to the gross income payable over the twenty-year term of the lease was not, in and of itself, objectionable inasmuch as they were merely testifying to "the rent reserved and other terms of the lease" which is now expressly permitted by the Eminent Domain Code.

However, we agree with the Condemnor that an improper use was made of the gross rental figure when the witnesses discounted it to what they considered to be the present value of the rental receivable over the twenty-year period of the lease and then assigned a specific value of $54,000 thereto, for two reasons: (1) It is improper for a valuation expert to assign a separate, specific value to one of the constituent elements entering into the market value of the property as a whole. *Olson & French, Inc. v. Commonwealth of Pennsylvania,* supra; *Dougherty v. Allegheny Co.,* 370 Pa. 239, 88 A. 2d 73 (1952). See also *Werner v. Commonwealth,* 432 Pa. 280, 247 A. 2d 444 (1968), where we held that minerals could not be valued separately apart from the remainder of the tract as a whole; (2) The placing of a specific value on the lease under the circumstances here present might convey to the jury the impression that this specific amount was lost by the Condemnees by virtue of the condemnation and was recoverable as a separate item of damages. See *Werner v. Commonwealth,* supra, and *Gilleland v. New York State Natural Gas Corp.,* 399 Pa. 181, 159 A. 2d 673 (1960).

Nor can the formula employed by the Condemnees' experts in reducing to its present value the total gross rental payable over the entire term of the lease be justified or in any manner construed as constituting "the capitalization of the net rental" of the condemned property which is permitted by subclause (iii) of the

above quoted section of the Eminent Domain Code. The formula used in arriving at the market value of property by the method of capitalization of income is to divide the *net* rental return by a capitalization rate. The capitalization rate is that rate which will attract buyers or investors and which is commensurate with the risk inherent in the particular property and the going rate in the market for comparable property. For example, if a property produced a net rental return of $6,000 per year and the reasonable capitalization rate is found to be 6%, the market value would be $100,000. Clearly the method employed by the Condemnees' experts was at variance with the proper method of capitalizing rental income. The method employed was in no way a capitalization either of net income or of the gross income.

But here again, proper steps were not taken by the Condemnor during the trial to preserve its right to have this particular error considered by this Court. The now challenged testimony was introduced without objection. While a motion was made to strike the *entire* testimony of one of the Condemnees' valuation experts, the reasons then assigned for striking the testimony were not those now asserted. Where a specific reason is assigned at trial for the exclusion of testimony, unasserted reasons are waived and will not be considered on appeal in determining the propriety of the trial court's refusal to exclude the testimony. *Beeruk Estate,* 429 Pa. 415, 241 A. 2d 755 (1968); *Risbon v. Cottom,* 387 Pa. 155, 127 A. 2d 101 (1956); and, *Lewis v. Pittsburgh Rwys. Company,* 386 Pa. 490, 126 A. 2d 454 (1956). Moreover, after testimony has been received without objection, the refusal to strike is not reviewable. In such a case, the correct and only course is to request the court to instruct the jury to disregard the testimony, and upon refusal, to assign error. *Fuller v. Palazzolo,* 329 Pa. 93, 197 Atl. 225

(1938). No such request was made here. Finally, where only a portion of a witness's testimony is properly objectionable, this portion should be specifically pointed out. The trial court will not be convicted of error in refusing a motion to strike which is general. *Gerhart v. East Coast Company,* 310 Pa. 535, 166 Atl. 564 (1933).

The Condemnor next complains that it was improperly restricted by the trial judge in its attempt to show that the lease with the sky diving club was not bona fide in that it was entered into with knowledge of the impending condemnation for the purpose of inflating or aggravating the Condemnees' damages. In the cross-examination of one of the Condemnees' valuation experts, counsel for the Condemnor asked the following question: "Did you take into consideration the fact that the lease was entered into by Mr. Boring after he had been contacted by the Metropolitan Edison Company about a right of way?" Upon objection made on the ground there was no evidence such was the fact, the court sustained the objection. There being no evidence in the record that the Condemnee had been so contacted, the objection was properly sustained since it assumed the existence of a fact not established by the evidence. *Hoffman v. Commonwealth of Pennsylvania,* 422 Pa. 144, 221 A. 2d 315 (1966). In a further attempt to show that the Condemnees had knowledge of the imminence of condemnation when the lease was entered into, the Condemnor as part of its case offered to call as a witness one who had under his direction the "field right-of-way men and all of the records made by them in connection with the securing of this line." The offer failed to state what testimony would be offered or that the records made by the field right-of-way men would show that the Condemnor communicated to the Condemnees the fact that it intended to run its right of way precisely across the center of the

aircraft landing strip so that the premises could no longer be used as a landing strip. Nor did the offer indicate that the records would qualify for admission under the Business Records Act. There was nothing in the offer to indicate that the proffered records were made at or near the time of the alleged "contact" with the Condemnees or that such records were kept in the regular course of business. In short, the Condemnor never offered to present any testimony by anyone who could or would say that the Condemnees were informed of the impending condemnation prior to the execution of the lease with the Sky Divers Club, much less that they knew that the power line would be of the type and at a location on the premises that would make impossible the use of the premises as an airstrip. Under the circumstances, we find no error in the trial judge's rulings in excluding the proffered evidence.

Finally, the Condemnor argues that the disparity between the $5,500 awarded by the Board of Viewers and the jury's verdict of $25,000 indicates that the jury's verdict was excessive. While the award of the Board of Viewers is an important circumstance to be considered when a new trial is requested either for inadequacy or excessiveness of the jury's verdict, it is not controlling. *Dague v. Commonwealth of Pennsylvania*, 418 Pa. 340, 211 A. 2d 527 (1965). Moreover, an appellate court will interfere with the judgment of the lower court in a condemnation case only if it feels that the verdict was so excessive or inadequate that the refusal of the court below to grant a new trial was a clear and manifest abuse of discretion or was unconscionable and shocking to the court's sense of justice. *Vaughan v. Commonwealth of Pennsylvania*, 407 Pa. 189, 180 A. 2d 12 (1962). The discrepancy between the valuations of the various experts who testified in this case was a question for the jury to resolve. It is clear that the jury failed to accept in full either

the Condemnees' testimony of damages in the amount of $86,000 or the Condemnor's testimony of damages in the amount of $3,600. This was within its province under the circumstances. We find no clear and manifest abuse of discretion in the lower court's refusal to grant a new trial on the ground of excessiveness.

Judgment affirmed.

Mr. Justice COHEN, Mr. Justice ROBERTS and Mr. Justice POMEROY concur in the result.

Mr. Justice JONES took no part in the consideration or decision of this case.