David Bosniak and Ann Bosniak, Appellants, *v.* The Redevelopment Authority of the City of Philadelphia, Appellee.

292

Argued April 1, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Lewis Kates*, with him *Leonard B. Edelstein* and *Joseph R. Livesey*, for appellants.

*Nicholas J. Scafidi*, with him *Peter A. Galante*, for appellee.

OPINION BY PRESIDENT JUDGE BOWMAN, July 16, 1975:

Prior to September 30, 1970, David and Ann Bosniak (appellants) owned and partially occupied premises known and numbered as 2101-03 North 13th Street, Philadelphia, Pennsylvania. On that date, this property was condemned by the Redevelopment Authority of the City of Philadelphia (appellee). On April 20, 1972, a duly appointed Board of View (Board) awarded appellants $42,078 as damages for the taking. Thereafter, cross-appeals were filed with the Court of Common Pleas of Philadelphia County. Although appellants requested and were granted a jury trial, both sides stipulated that the issue of business dislocation damages would be resolved by the court.

The jury returned a verdict of $29,250, which did not include any award for business dislocation damages agreed by the parties to be decided by the court. Appellants then motioned for a new trial. By opinion and order dated August 19, 1974, the court denied appellants' motion, found that appellants were not entitled to business dislocation damages, and entered judgment on the verdict. This appeal followed.

Appellants cite four bases for reversing the lower court's order refusing the grant of a new trial: (1) the court erred in permitting appellee to introduce into evidence the inventory prepared and filed during the course of settling the estate of appellant David Bosniak's mother; (2) the court erred in excluding evidence, offered by appellants, of insurance coverage on the condemned premises; (3) the court's instructions to the jury with respect to "imminence of condemnation" were misleading and erroneous; and (4) the verdict was against the clear weight of the evidence. Further, appellants argue that the court's nonallowance of business dislocation damages resulted from a misapplication of the appropriate law.

While appellants had been record owners of 2103 North 13th Street since 1955, fee simple title to 2101 North 13th Street was initially obtained by appellant David Bosniak as a specific devisee under his mother's will, in April of 1966. By deed dated June 13, 1966, David Bosniak conveyed 2101 North 13th Street to himself and appellant Ann Bosniak, as tenants by the entireties.

During the course of the trial, appellant David Bosniak testified on appellants' behalf. Although his testimony contained no opinions or allusions as to the value of the subject premises, appellee was permitted, over appellants' objections, to cross-examine David Bosniak by use of the inventory which had been prepared and filed by the witness, as executor of his mother's

estate. This inventory listed the "fair value" of 2101 North 13th Street as $6,500 at the time of Mrs. Bosniak's death (July, 1965).

Although there is no precisely controlling Pennsylvania decision, the Supreme Court has been confronted with the question of whether a value set by a condemnee for purposes other than and without a view towards condemnation may, for any purpose, be admitted into evidence in an eminent domain proceeding. The Supreme Court's resolution of the question has depended upon several factors: (1) whether the "noncondemnation" value has any probative value in an eminent domain proceeding; (2) whether the "noncondemnation" value clearly applies to the condemned property and does not include other properties owned by the condemnee; and (3) whether persons other than the "noncondemnation" evaluator will be affected by the admission of the value into evidence. *Olson & French, Inc. v. Commonwealth,* 399 Pa. 266, 160 A.2d 401 (1960); *B. & K., Inc. v. Commonwealth,* 398 Pa. 518, 159 A.2d 206 (1960); *Graham Farm Land Company v. Commonwealth,* 363 Pa. 571, 70 A.2d 219 (1950).

In *Graham, supra,* the trial court refused the condemnor's offer of the condemnee's corporate capital stock return, which return listed the value of the condemned property at a lesser amount than that claimed by the condemnee in the eminent domain proceeding. The Supreme Court reversed.

> "To exclude the return is to recognize that a taxpayer can place one value on his property for tax purposes and another for the purpose of carrying on proceedings in eminent domain cases." 363 Pa. at 574, 70 A.2d at 221.

In *B. & K., Inc. v. Commonwealth, supra,* the court reached an opposite conclusion on the admissibility of a corporate capital stock return, and distinguished *Graham* on three bases:

1) Unlike that in *Graham,* the corporate return in *B. & K., Inc.* had no clear probative value in that the value on the return was *higher* than the value claimed in eminent domain;

2) The value on the corporate return in *B. & K., Inc.* included all of the condemnee's real estate holdings. Thus, if the return was admitted, the jury would have been required to speculate on what portion of this value should be assigned to the particular tract which had been condemned;

3) While *Graham* involved a one-man corporation, *B. & K., Inc.* had multiple stockholders, all of whom would have been adversely affected by the admission of one person, the preparer of the return. This factor was also cited as controlling in *Olson & French, Inc., supra,* in which the identical issue was raised.

Appellants' situation parallels that of *Graham* and involves none of the objectionable circumstances found in *B. & K., Inc. and Olson & French, Inc.,* with one possible exception. Although at the time the inventory was prepared, appellant David Bosniak was the sole owner of the condemned premises (excepting, of course, Ann Bosniak's statutory dower rights), the intervening transfer of the property into a tenancy by the entireties made the admission of the inventory into evidence equally prejudicial to the rights of appellant Ann Bosniak. However, the courts of this state have never equated the rights of a joint tenant or tenant by the entireties with those of multiple stockholders, where the admissibility of party admissions is concerned. That is, unlike the stockholder situation in *B. & K., Inc.* and *Olson & French, Inc., supra,* the admissions of one joint tenant have been held to be competent against all. *LaFuria v. New Jersey Insurance Company,* 131 Pa. Superior Ct. 413, 200 A. 167 (1938). We agree that the two situations are distinguishable, and that the estate inventory was properly admitted at trial.

Following the introduction and admission of the inventory, appellants attempted to rehabilitate their case by way of evidence as to the insurance coverage on the subject premises. Appellee objected, and the objection was properly sustained. Evidence of insurance policy limits has no probative value in an eminent domain proceeding, and its revelation to the jury, even for the limited purpose of rehabilitation, would be totally misdirecting.

> "The value which a property must take in condemnation proceedings is the market value as a whole . . . while insurance value looks toward what might be termed a reproduction cost of the buildings thereon. . . ."[1]

In their motion for new trial, appellants' enumerated grounds in support of the motion included several allegations of error in the trial court's instructions to the jury. One of these has been argued here, namely, that the court misstated the law regarding "imminence of condemnation."[2] However, at trial, upon the completion of the instructions, appellants failed to record an exception to this allegedly objectionable action of the court. Their subsequent recitation of error in the motion for new trial did not cure this procedural infirmity, and the issue now raised need not and will not be disposed of here. *Pennsylvania Railroad Company v. Pittsburgh,* 335 Pa. 449, 6 A.2d 907 (1939)'; *Maculuso v. Humboldt Fire Insurance Co. of Pittsburgh,* 271 Pa. 489, 115 A. 828 (1922).

The Board awarded appellants $42,078 as reasonable compensation for the taking. Before the jury, appellants' experts valued the subject premises at $52,965, while

---

1. *Westmoreland Chemical and Color Co. v. Public Service Commission,* 293 Pa. 326, 331, 142 A. 867, 869 (1928).

2. Section 604 of the Eminent Domain Code, Act of June 22, 1964, Spec. Sess., P. L. 84, 26 P.S. §1-604.

appellee's experts' estimate was $23,855. The jury returned a verdict of $29,250.

> "A new trial should be awarded on the ground that the verdict is against the weight of the evidence only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail."[3]

Having carefully reviewed the entire record, with particular emphasis upon the interposition of the verdict between the opposing experts' opinions, we cannot say that "shock" should have been the trial court's immediate and natural response to the reading of the verdict. Also, while a discrepancy between the award of the Board and that of the jury is an appropriate factor for consideration,[4] such a discrepancy does not, by itself, warrant the grant of a new trial.[5]

On the date of condemnation, the first floor of the subject premises was arranged as a bar and a grocery store, neither of which were functioning as businesses at the time. The second and third floors were divided into six apartments, some of which were then occupied by tenants. Appellant's claim for business dislocation damages has been premised upon the use of the property as an apartment building. The trial court denied such damages on the grounds that the apartments were being held as an investment, rather than operated as a business.

The then applicable statutory provision read, in pertinent part, as follows:

> "The condemnee shall be entitled to damages, as provided in this section, for dislocation of a business

---

3. *Burrell v. Philadelphia Electric Company*, 438 Pa. 286, 289, 265 A.2d 516, 518 (1970).

4. *Faith United Presbyterian Church v. Redevelopment Authority*, 7 Pa. Commonwealth Ct. 490, 298 A.2d 614 (1972).

5. *Morrissey v. Commonwealth, Department of Highways*, 440 Pa. 71, 269 A.2d 866 (1970).

located on the condemned property, *but only where it is shown that the business cannot be relocated without substantial loss of patronage.*"[6] (Emphasis added.)

While the trial court focused upon the existence or non-existence of a compensable "business," we view the major impediment to appellants' recovery of business dislocation damages to be appellants' failure to have carried the prescribed burden of proof. The record indicates no reasonable effort on the part of appellants to have relocated the apartment "business." At trial, the sole reference to "relocation" concerned the bar, about which appellant David Bosniak testified as having made no effort to relocate. Appellants have not sought business dislocation damages for the loss of bar patrons, and this testimony, in addition to its dubious persuasive value, is without relevance. Even assuming that the maintenance and rental of apartments was a "business" under the former section 609, appellants were properly denied entitlement to business dislocation damages.

We therefore affirm the order of the Court of Common Pleas of Philadelphia County, dated August 19, 1974.

---

6. Section 609, *as amended,* of the Eminent Domain Code (repealed 1971).

---

DISSENTING OPINION BY JUDGE KRAMER:

I respectfully dissent.

Perhaps my experience sitting on an Orphans' Court unduly sways me, but it is easy for me to conceive of reasons for lawfully evaluating property for estate administration purposes in a manner which might result in an inventory appraisal different from the fair market value sought in an eminent domain case. For example, sometimes the heirs will anticipate personal federal income tax problems as a result of some future use of the property, and the personal representative of the

estate will intentionally establish a high value. The inheritance and estate tax authorities will not object because tax revenues are increased.

Anyone who has worked extensively with appraisers in inheritance and estate tax cases knows that sometimes they do not view the property in question, and that estate valuations are much less formal and exacting than those prepared for condemnations. Estate valuations should be considered highly questionable in eminent domain cases. There is no good reason for allowing evidence which is of dubious probative value.

The cases cited by the majority all involved corporate capital stock returns which are materially different from inheritance and estate tax returns. From my point of view the lower court committed reversible error when it permitted cross-examination of Bosniak on the estate inventory. I would avoid the creation of an unsound rule of evidence and reverse with direction for a new trial.[1]

---

1. I would have no objection to the use of estate valuations in eminent domain cases if their admissibility is conditioned upon evidence indicating that the inventory or tax appraisement in question (1) was based upon a proper appraisal, and (2) reflected market value without regard to extraneous considerations such as those mentioned above.