385 A.2d 480

**COMMONWEALTH of Pennsylvania**

v.

**David KLOSS, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 16, 1976.

Decided April 13, 1978.

James M. Keller, Ellwood City, for appellant.

Thomas M. Piccione, Assistant District Attorney, New Castle, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

 Appellant was convicted of robbery.[1] On this appeal he contends that the trial judge erred in ruling that as a matter of law, the lower court had jurisdiction of the crime. We affirm.[2]

The Commonwealth's evidence was to the following effect. On June 20, 1975, at about 2:00 a. m., George Anderson, a customer at a bar in New Castle, Lawrence County,

1. Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, as amended Act of June 24, 1976, P.L. 425, No. 102, § 1, 18 Pa.C.S. § 3701.

2. Appellant's other contentions require only cursory treatment. Appellant contends that the judge erred in not instructing the jury that an accomplice's testimony comes from a "corrupt source". However, a reading of the judge's instruction, N.T. 327, reveals that it substantially complies with the law as stated in *Commonwealth v. Vorhauer*, 232 Pa.Super. 84, 331 A.2d 815 (1974). Appellant further contends that the judge erred in failing to instruct the jury that their verdict need not be unanimous—that the jury might be "hung." However, as the judge was explaining the verdict slip to the jury he stated: ". . . and your return is that you find the Defendant guilty, or that you find the Defendant not guilty—or you don't arrive at a verdict." N.T. 332. Appellant's last contention is in regard to several questions that served to elicit from Stephenson, appellant's accomplice, answers to the effect that he had been approached by the police, that charges were pending against him, and that although he had cooperated with the authorities, no promises had been made to him. N.T. 134–138. Appellant contends that this line of questioning impermissibly rehabilitated the witness's credibility before it had been impeached. However, defense counsel's only specific objection was as follows: "These are all statements that have nothing to do with—that are inadmissible, either on the grounds of being irrelevant—or on the grounds of not being in furtherance of any conspiracy." N.T. 135. This objection was correctly overruled—the testimony was not irrelevant. Only those objections specifically raised below will be considered on appeal. *See Boring v. Metropolitan Edison Co.*, 435 Pa. 513, 257 A.2d 565 (1969).

Pennsylvania, asked a barmaid to summon a taxicab to take him to Youngstown, Ohio. (Lawrence County borders on Ohio.) The barmaid did so, and told the dispatcher that the driver should come to the door to escort the passenger because he was carrying a lot of money. (During the evening Anderson had asked the barmaid to hold $500 for him until he was ready to go home.) The dispatcher called a cab driver named Edward Stephenson to go to the bar. Appellant, who was another cab driver and was in the dispatcher's office when the barmaid called, immediately called Stephenson and suggested that they meet and rob Anderson. Stephenson picked up Anderson in New Castle, and Anderson got in the front seat of the cab. En route to Youngstown the cab was passed by a blue Ford owned by appellant, which was flicking its lights on and off. Further on, while still in Pennsylvania, Stephenson stopped and picked up appellant, who was then hitchhiking. Appellant got into the back seat. The cab then proceeded on back roads of Pennsylvania and Ohio and finally stopped near a graveyard. During much of this journey Anderson had been asleep. While Stephenson pretended that his cab had a flat tire, appellant pulled Anderson from the cab, beat him up, and took approximately $96 from his person. Anderson was placed back in the cab and the journey continued on back roads until Anderson was finally let out at the crossroads of routes 422 and 551 in Pennsylvania. Appellant denied any participation in the crime and presented three alibi witnesses.

Although the charge was that the place where the robbery had been committed was Lawrence County, the evidence failed to establish that. Stephenson testified that when he and appellant had agreed to commit the robbery they were in Brookfield, Ohio, N.T. 91–92, and that from there they had pursued many different back roads, N.T. 91–97, until they reached an unidentified graveyard. Anderson testified that he had no idea where the robbery occurred. N.T. 24. A police officer testified that he drove Anderson through the back roads of Lawrence County the next day, and Anderson

was unable to find the graveyard. N.T. 224–225. He also testified that "[a]t the initial interview at the barracks, he [Anderson] recalled being brought back into Pennsylvania— he felt—after the crime occurred,". N.T. 225.

Appellant first demurred to the evidence on the ground that the Commonwealth had failed to establish that the robbery had been committed within the court's jurisdiction. When the trial judge refused to grant the demurrer, appellant asked the judge to submit to the jury the question whether the robbery had been committed in Pennsylvania, so that the jury might decide whether the court had jurisdiction. The judge refused to grant the request, instead charging the jury that "as a matter of law the question of jurisdiction is not for you in this case." N.T. 328.

Jurisdiction to try a person on a criminal charge lies only in the courts of the state or county where the crime was committed. *Huntington v. Attrill*, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123 (1892). While some evidence of the place of the crime must be offered by the prosecution to sustain a guilty verdict, *Commonwealth ex rel. Chatary v. Nailon*, 416 Pa. 280, 206 A.2d 43 (1965); *Commonwealth v. Tarsnane*, 170 Pa.Super. 265, 85 A.2d 606 (1952), where there is a real question as to the place, it is reversible error for the trial judge to refuse the defendant's request to submit that question to the jury. *Commonwealth v. Mull*, 316 Pa. 424, 175 A. 418 (1934). *And see Commonwealth v. Bighum*, 452 Pa. 554, 307 A.2d 255 (1973); *Commonwealth v. Hainds*, 448 Pa. 67, 292 A.2d 337 (1972); *Commonwealth v. Tarsnane, supra; Commonwealth v. Wojdakowski*, 161 Pa.Super. 250, 53 A.2d 851 (1947). Thus in *Commonwealth v. Tarsnane, supra*, a sodomy conviction was reversed where the victim, a seven year old girl, was unable to indicate the location of the house she had been driven to, where the crime was alleged to have occurred. In *Commonwealth v. Mull, supra*, a murder case, the only evidence of where the crime was committed was that the body was found with a quantity of blood beneath it. Since on these facts there was a real question as to where the crime was committed, it was held

error to refuse the defendant's request to submit that question to the jury.

Under these cases the question would be whether there was enough evidence to warrant submitting to the jury the question of where the crime was committed. Arguably there was not; as mentioned, neither Stephenson, nor Anderson, nor the police officer stated where the graveyard was.[3]

Here, however, that is not the question, for the law has been changed by the promulgation of the Crimes Code, which provides in pertinent part:

(a) General rule.—Except as otherwise provided in this section, a person may be convicted under the law of this Commonwealth of an offense committed by his own conduct or the conduct of another for which he is legally accountable if either:

. . . . .

(4) conduct occurring within this Commonwealth establishes complicity in the commission of, or an attempt, solicitation or conspiracy to commit, an offense in another jurisdiction which also is an offense under the law of this Commonwealth.

Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, eff. June 6, 1973, 18 Pa.C.S. § 102(a)(4).

Therefore, wherever the graveyard was, that is, whether the act of robbery itself was committed within Pennsylvania or Ohio, is not determinative.

■ If in fact the robbery was committed in Pennsylvania, no jurisdictional objection can be raised. If, on the other hand, in fact the robbery was committed in Ohio, still the lower court had jurisdiction if appellant engaged in such conduct in Pennsylvania as described in the Crimes Code. Here appellant did engage in such conduct. While still in

3. If the conclusion were reached that there was not enough evidence to warrant submitting the question to the jury, we should have to consider the effect of the fact that on this appeal appellant does not press his motion below in arrest of judgment but only requests a new trial.

Pennsylvania, he called Stephenson and suggested that they rob Anderson. Also while still in Pennsylvania, he arranged to, and did, intercept Stephenson's cab and obtain passage in it, all to further his and Stephenson's plan to rob Anderson. This evidence was sufficient to support a finding of "conduct occurring within this Commonwealth . . . in the . . solicitation or conspiracy to commit, an offense in another jurisdiction [Ohio] which also is an offense under the law of this Commonwealth." Crimes Code, *supra.*

It is true that the jury was not specifically instructed to make a finding as to whether such conduct, as described in the Crimes Code, occurred in Pennsylvania. However, appellant did not request such an instruction and therefore cannot complain now that it was not given.[4] *See Commonwealth v. Hilton,* 461 Pa. 93, 334 A.2d 648 (1975). It is clear from the verdict of guilty that the jury rejected appellant's alibi evidence, and rather decided that while in Pennsylvania appellant had called Stephenson and met him, and had later, with him, committed the robbery. It therefore appears that as acts constituting a conspiracy occurred in Pennsylvania, *see* 18 Pa.C.S. 903, the court had jurisdiction.[5]

Affirmed.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

4. When, in the future, such a request is made, the court should instruct the jury that if the evidence does not show where the robbery occurred, (assuming that the jury does find that a robbery occurred) the jury must decide whether such conduct as described in the Crimes Code occurred in Pennsylvania. If the jury finds that such conduct did not occur in Pennsylvania then they must acquit the defendant. *Cf. Commonwealth v. Bighum, supra; Commonwealth v. Hainds, supra; Commonwealth v. Mull, supra; Commonwealth v. Tarsnane, supra; Commonwealth v. Wojdakowski, supra.*

5. The lower court based its refusal to submit to the jury the question of where the robbery was committed on the Journey Act and alternatively on the Crimes Code definition of robbery. We cannot accept either of these reasons. The Journey Act, Act of March 31, 1860, P.L. 427, § 49, 19 P.S. 525, applies only to situations where it is unclear in which of two counties an alleged crime has occurred; it

does not apply where, as here, the question is which state has subject matter jurisdiction. *See* 19 P.S. 524. In relying on the Crimes Code definition of robbery the lower court held that jurisdiction was conferred if there was any act committed in this Commonwealth that was committed "in the course of committing a theft." *See* 18 Pa.C.S. 3701. By this interpretation, a Pennsylvania court could try a robbery committed in another state, if only the robber fled into Pennsylvania; this would render meaningless all statutory provisions relating to extradition as well as transforming all thefts into robberies as soon as the perpetrator took flight. We are nevertheless able to affirm the judgment of sentence on the basis of the discussion in the body of this opinion, *supra*. *See Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d 435, 438, n. 5 (1975); *Gilbert v. Korvette*, 457 Pa. 602, 327 A.2d 94, 96, n. 5 (1974).