# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

AmerisourceBergen Sourcing, LLC,  :
                Petitioner  :
                                   :   No. 406 F.R. 2024
                    :
           v.                :   No. 407 F.R. 2024
                    :   No. 408 F.R. 2024
Commonwealth of Pennsylvania,  :   ARGUED:  September 9, 2025
                Respondent  :


BEFORE:   HONORABLE ANNE E. COVEY, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**OPINION BY**
**SENIOR JUDGE LEADBETTER**             **FILED:  December 24, 2025**


Before the Court is AmerisourceBergen Sourcing, LLC's application for relief seeking an Order directing the Commonwealth to redact the amount of tax at issue from its status reports filed in these consolidated cases, and the Commonwealth's answer in opposition.  The underlying legal issue is one of first impression, that being whether, in appeals to this Court from orders of the Board of Finance and Revenue, the amount of tax at issue qualifies as confidential taxpayer information so that it should be shielded from public access, at least in the early stages of an appeal.  For the reasons stated below, we find that, aside from whether the amount of tax at issue is legally required to be confidential, the better practice is to withhold public disclosure until such time as the appeal is ripe for litigation.

These consolidated appeals involve Amerisource's corporate net income tax liability for periods spanning 2016 to 2019.  After Amerisource instituted the appeals, the Court issued its standard initial orders directing that each party file

detailed status reports containing certain pertinent information, including the "best estimate of the amount at issue[.]" *See, e.g.*, 5/9/2025 Order for No. 406 F.R. 2024. In response, Amerisource filed redacted and unredacted copies of status reports at each docket number, claiming "that the amount of tax at issue is confidential taxpayer information protected from public disclosure by the Commonwealth under" Section 731 of The Fiscal Code,[1] 72 P.S. § 731, and Section 274 of the Tax Reform Code of 1971, 72 P.S. § 7274.[2] *See, e.g.*, Amerisource's 6/9/2025 Status Rep. for No. 406 F.R. 2024.

Undeterred by taxpayer's claim of confidentiality, the Commonwealth followed this Court's directive and filed status reports that specifically included the amount of tax at issue in each case. *See, e.g.*, Commonwealth's 6/10/2025 Status Rep. for No. 406 F.R. 2024.[3] Amerisource requested that the Commonwealth redact this information from its status reports, but the Commonwealth refused, thus prompting Amerisource to file the instant application. *See* Amerisource's 6/19/2025 Appl. at 1. The Commonwealth filed an answer in opposition, and the matter was directed to this panel for argument, given the recurring nature of the underlying legal issue. *See, e.g.*, *Gen. Motors Co. v. Commonwealth* (Pa. Cmwlth., Nos. 281-283 F.R. 2024, filed Dec. 24, 2025) (argued seriately).

Amerisource's arguments are grounded primarily in Section 731 of The Fiscal Code, which states, in pertinent part:

> Except as provided by law, **any information gained by any administrative department**, board, or commission, **as a result of any returns, reports, correspondence,**

---

[1] Act of April 9, 1929, P.L. 343, *as amended*, 72 P.S. §§ 1-1805. Section 731 was added by the Act of June 6, 1939, P.L. 261.

[2] Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§ 7101-10004.

[3] The Court consolidated these matters by Order issued June 11, 2025.

> **claims, investigations**, hearings, certifications or verifications required or authorized under the statutes of the Commonwealth imposing taxes or bonus for State purposes, or providing for the collection of the same, providing for credits as administered by the Department of Revenue independently or in conjunction with other agencies or revenue transfers to improvement or economic development zones **shall be confidential** *except for official purposes*, and except that such information may be given to any other state or to the Government of the United States, where such state or the United States by law authorizes the furnishing of similar information to the Commonwealth of Pennsylvania.

72 P.S. § 731 (emphases added). Sections 274 and 408(b) of the Tax Reform Code both contain similar language making confidential, *except for official purposes*, "[a]ny information gained by the [D]epartment" of Revenue as a result of any returns, investigations, etc. 72 P.S. §§ 7274, 7408(b). All three statutes make it a misdemeanor criminal offense for any person or agent to unlawfully divulge such confidential information. *See* 72 P.S. §§ 731, 7274, 7408(b).

We agree with Amerisource that the statutes' use of the words "any information" "cast[s] a wide net of protection over confidential information[.]" Amerisource's Appl. at 3. Here, it is indisputable that the Commonwealth obtained the amount of tax at issue from the corporate tax reports, assessments, and assessment appeals filed by Amerisource; therefore, under The Fiscal Code and the Tax Reform Code the information may not be disclosed except for official purposes. Notably, the Board appears to recognize this fact as its own regulations and standard practice call for redacting the amounts of tax from its decisions and orders, which

are publicly available on the Board's website. *See* 61 Pa. Code § 703.52(a)(2) & (4);[4] *see also* Amerisource's Appl., Ex. B.

We now turn to the "official purposes" exception. The statutes do not define the phrase "official purposes," and the parties have put forth drastically opposed interpretations. The Commonwealth, for its part, argues that the Office of Attorney General is engaging in official tax administration or tax collection purposes and protecting the public fisc by representing the Commonwealth in these appeals. As a general matter, we agree.

In contrast, Amerisource maintains that the statutory exception "for official purposes" applies only when the disclosure of confidential information is both involuntary and necessary. *See* Amerisource's Appl. at 4 [citing *Commonwealth v. Mellon Nat'l Bank & Tr. Co.*, 61 A.2d 430 (Pa. 1948); *Graham Farm Land Co. v. Commonwealth*, 70 A.2d 219 (Pa. 1950)]. Under Amerisource's interpretation, necessary refers to a "situation where disclosure goes to proving a fact or element of a claim before the Court[.]" Amerisource's Appl. at 4-5. Amerisource further posits that an involuntary disclosure would include one made pursuant to a subpoena. *Id.* Because the disclosure here was made at an early juncture of the appeals, as part of the Commonwealth's initial status report, Amerisource claims that it was neither involuntary nor necessary and, therefore, the official purposes exception does not apply.

None of the tax statutes cited by the parties expressly include the terms "necessary" or "involuntary," or any other language restricting or conditioning the

---

[4] This section of the Board's regulations pertaining to "redaction" provides that prior to publication of an order, the Board will redact the "[s]pecific dollar amounts of tax[,]" and "[o]ther information determined by the Board to be confidential under State or Federal law." 61 Pa. Code § 703.52(a)(2) & (4).

exception—they simply refer generally to "official purposes." *See* 72 P.S. §§ 731, 7274, 7408(b). As stated earlier, the statutes also do not define the phrase. In support of its argument, Amerisource points to cases interpreting the statutes as requiring that the disclosure be involuntary and necessary. As counsel for Amerisource conceded during oral argument, however, none of those cases is squarely on point with either the procedural posture or the legal issue raised herein.

The first decision of note addressing Section 731 of The Fiscal Code and the confidentiality of taxpayer information is *Mellon*, which dates back to 1948. There, the bank appealed from a resettlement made of the tax on its shares by the Department of Revenue and the Auditor General, asserting both constitutional and statutory violations. *Mellon*, 61 A.2d at 432. At trial, the bank sought subpoenas directed to the Secretary of Revenue to produce the tax on shares reports and other documents relating to all trust companies and various other institutions. *Id.* The trial court directed that the subpoenas be issued, over the Commonwealth's objection, and the Commonwealth then petitioned our Supreme Court for a writ of prohibition enjoining the enforcement of the subpoenas, alleging that production of the documents would violate Section 731's mandate that they be kept confidential except for official purposes. *Id.*

The *Mellon* Court held that because the trial court was acting within its jurisdiction when it directed that the subpoenas be issued, the record did not present a case for a writ of prohibition. *Id.* at 435. Importantly, in rejecting the Commonwealth's arguments, the Court adopted the reasoning of the trial court, in particular its statement that "[t]he purpose of . . . Section [731 of The Fiscal Code] is to prohibit *voluntary* disclosures. It is not intended to defeat justice by prohibiting

5

the production of *necessary* records in judicial proceedings." *Id.* at 434 (emphasis added). However, the *Mellon* Court went on to caution:

> We cannot find that this [] establishes the right of any attorney to subpoena the production of any records in the possession of the Department [of Revenue]—indeed of any administrative department, including the Department of Justice—and to offer them for any purpose in any proceeding in any Court[], of which the Attorney General is so apprehensive. It simply means that upon a proper showing and for a proper and legitimate purpose as in this case, the evidence may be subpoen[a]ed, and the manner and the extent of the disclosure of the contents of such records still remain under the discretionary control of the trial judge.[]

*Id.* at 435. This is not to say, however, that only involuntary disclosure of tax information is permissible, let alone that only involuntary disclosures amount to "official purposes." There are certainly situations in which voluntary disclosures are made within the parameters of official purposes. Nevertheless, we need not attempt to address such circumstances here because the Commonwealth's disclosure of the amount of tax at issue on appeal was, in fact, involuntary. It was done at the specific direction of this Court and, as we have said many times, orders are not suggestions.

The issue of necessity presents a closer question. Our Supreme Court revisited the issue of confidentiality just two years after *Mellon* in *Graham Farm Land*. However, *Graham Farm Land* was not a tax case at all, but a condemnation action for the construction of a public highway where the corporate landowner appealed the compensation award. 70 A.2d at 220. The landowner's president and sole shareholder did not testify on direct examination regarding the value of the land. *Id.* On cross-examination, the Commonwealth attempted to question him about the corporation's capital stock report which showed the actual value of the condemned

6

land. The trial court sustained the landowner's objection and refused to allow questions based on the report or admit it into evidence "on the theory that Section 731 of [T]he Fiscal Code[] rendered the information contained therein confidential and therefore inadmissible." *Id.* at 220-21 (footnote omitted). The Commonwealth appealed, primarily challenging this ruling.

Our Supreme Court held it was error for the trial court to exclude the landowner's own estimate of the value of the land, set forth in its own tax return. The Court explained that the value of the land was the primary issue at trial and the landowner "was certainly in a position through its officers, to know the value of its properties." *Id.* at 221. The Court relied, in part, on its ruling in *Mellon*, and explained that "Section 731 was added to [T]he Fiscal Code in order to protect the taxpayer from unnecessary disclosure of the information contained in his tax return." *Id.* While the Court ordered that a new trial be granted, it cautioned that "[m]uch of the material contained in the return need not be disclosed and what is unnecessary should be withheld from the jury." *Id.*

Our Supreme Court went on to recognize the limitation of *Graham Farm Land* in two subsequent condemnation matters, *Olson & French, Inc. v. Commonwealth*, 160 A.2d 401 (Pa. 1960), and *Frontage, Inc. v. County of Allegheny*, 162 A.2d 1 (Pa. 1960).[5] In both cases, the Supreme Court acknowledged

---

[5] In *Olson & French*, the Commonwealth condemned a five-story warehouse for state park purposes. The Commonwealth appealed the board of view's award, and both parties presented valuation testimony before the trial court through real estate experts. The Commonwealth also sought to use the landowner "company's capital stock tax return for the period covering the date of condemnation" as evidence of "the company's low valuation of the property[.]" *Olson & French*, 160 A.2d at 403. Just as in *Graham Farm Land*, the trial court refused to admit the tax return into evidence, and the Commonwealth ultimately appealed.

After reviewing the tax return *in camera*, the Supreme Court held that the trial court properly sustained the objection because the tax return contained only the depreciated book value **(Footnote continued on next page…)**

that its ruling in *Graham Farm Land* "has been appropriately restricted to the peculiar facts of that case." *Olson & French*, 160 A.2d at 403. *See also Frontage*, 162 A.2d at 7 (same). Given this cautionary language and the significant factual distinctions between *Graham Farm Land* and the matters presently before us, we find that case to be of little or no application here.

This Court has also repeatedly discussed Section 731 of The Fiscal Code and other tax statutes pertaining to confidential taxpayer information in the realm of the Right-to-Know Law.[6] *See, e.g.*, *Governor's Off. of Admin. v. Campbell*, 202 A.3d 890 (Pa. Cmwlth. 2019); *McElfresh v. Dep't of Transp.*, 963 A.2d 582 (Pa. Cmwlth. 2009); *Pa. Dep't of Revenue v. Wagaman* (Pa. Cmwlth., No. 1494 C.D. 2019, filed Dec. 30, 2021).[7] These cases are, no doubt, legally distinguishable; however, they all recognize the general principle that "Section 731 of The Fiscal Code treats information collected for tax purposes as confidential[.]" *Campbell*, 202 A.3d at 895.

---

of the property, not the actual value as in *Graham Farm Land*, and was "therefore irrelevant and immaterial to the issue of fair market value[.]" *Olson & French*, 160 A.2d at 403-04. The Court also stressed additional differences between the two cases, including the fact that the corporation in *Olson & French* was not owned by a single stockholder and no corporate officer testified or made claims as to the value of the condemned property. *Id.* at 403. As the Court explained, "the capital stock tax return in the *Graham* [*Farm Land*] case constituted an admission against interest on the part of the sole stockholder and verily impeached the integrity of his claim." *Id.* The Court recognized that "[t]he applicability of [its] ruling in the *Graham* [*Farm Land*] case with respect to the admissibility of a corporation's capital stock tax return in a condemnation proceeding has been appropriately restricted to the peculiar facts of that case." *Olson & French*, 160 A.2d at 403. *See also Frontage*, 162 A.2d at 7 (reiterating that the *Graham Farm Land* case "has been appropriately limited to its peculiar facts").

[6] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

[7] Unreported panel decisions of this Court may be cited for their persuasive value pursuant to Rule 126(b)(1)-(2) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 126(b)(1)-(2), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

While the above cases are not legally or procedurally on point, and thus are not binding precedent with respect to the particular legal issue presented herein, we find them to be salutary. Even though it is not clear that the law requires the disclosure of confidential information to be *necessary* for the official purposes exception to apply, we find it to be the better practice. *See Mellon*, 61 A.2d at 435 (explaining that "the manner and the extent of the disclosure of the contents of [confidential tax information] still remain under the discretionary control of" the court). Here, Amerisource's tax appeals are in their infancy—there is no way to know if the matters will settle, as the majority of the tax appeals before this Court do, or be litigated. The Commonwealth is unable to articulate an actual need to disclose the amount of tax at issue to the public at this particular stage of the proceedings, and counsel conceded during oral argument that no harm or prejudice would befall the Commonwealth in defending these appeals if the information remained confidential for now. While the Court uses the amount of tax at issue for internal case management purposes, the disclosure of this information to the general public *at this juncture* is plainly not necessary. Amerisource has asserted its desire to keep the amount of tax at issue confidential at this procedural juncture, and we find that the relevant tax statutes show the merit in such concerns as a policy matter, even if they do not bar disclosure as a matter of law. If and when these matters proceed to factual development, either through the stipulation of facts or an evidentiary hearing, the disclosure of this information will become necessary so that the amount of tax at issue will be appropriately disclosed.[8]

---

[8] We reject taxpayer's categorical assertion that the amount of tax at issue is always confidential and need not be disclosed at any point during the pendency of tax appeals before this Court. We cannot square such a strict interpretation of the statutes with either the official purposes exception or this Court's need to adjudicate the legal matters presented for our determination during tax appeals.

The Commonwealth also contends that the Court must consider the question of what constitutes confidential information within the broader context of the public's right of access. It cites to both the open courts mandate under article I, section 11 of the Pennsylvania Constitution,[9] as well as the common law presumption of openness as it relates to judicial records and documents. *See, e.g.*, *Commonwealth v. Fenstermaker*, 530 A.2d 414, 418 (Pa. 1987) (noting the presumption of openness applies to judicial records and documents); *Pa. ChildCare, LLC v. Flood*, 887 A.2d 309, 312 (Pa. Super. 2009) ("Pennsylvania has a mandate for open and public judicial proceedings in both the criminal and civil settings.").[10] However, this right is not absolute, *Fenstermaker*, 530 A.2d at 419-20, and "the public may . . . be excluded from such proceedings or records to protect public or private interests," *In re Est. of duPont*, 2 A.3d 516, 519 (Pa. 2010) (citations omitted). Moreover, "our courts have an inherent power to control access to their records and proceedings and may deny access when appropriate—for example, to protect the privacy rights of individuals[.]" *In re M.B.*, 819 A.2d 59, 62 (Pa. Super. 2003). *See also duPont*, 2 A.3d at 521 ("a request to seal or unseal judicial records is a matter committed to the discretion of the . . . court").

Prior to factual development, where there is no explicit assertion of any reasoned need to publicly disclose the amount of tax at issue, the presumption of openness must be balanced with the intent of the legislature, through The Fiscal Code and the Tax Reform Code, to designate certain tax information as confidential.

---

[9] Pa. Const. art. I, § 11 ("All courts shall be open[.]").

[10] While not binding on this Court, Superior Court decisions "offer persuasive precedent where they address analogous issues." *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

Therefore, we find that the Commonwealth's presumption of openness argument does not change our outcome.

Accordingly, we grant Amerisource's application and direct the Prothonotary to strike the Commonwealth's detailed status reports from the dockets in these matters. The Commonwealth shall refile redacted and unredacted versions of its initial detailed status reports within 30 days of our Order. Moving forward, in appeals to this Court from orders of the Board, if taxpayers wish to have the amount of tax at issue initially remain confidential prior to the factual development phase, they are instructed to file redacted and unredacted versions of status reports and similar documents containing this information. Parties shall also comply with the Case Records Public Access Policy of the Unified Judicial System of Pennsylvania, 204 Pa. Code § 213.81.

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

AmerisourceBergen Sourcing, LLC,   :
             Petitioner   :
                         :    No. 406 F.R. 2024
      v.                      :    No. 407 F.R. 2024
                         :    No. 408 F.R. 2024
Commonwealth of Pennsylvania,   :
             Respondent   :

## <u>O R D E R</u>

AND NOW, this 24th day of December, 2025, AmerisourceBergen Sourcing, LLC's Application for Relief is GRANTED. The Prothonotary shall strike the Commonwealth's "Detailed Status Reports" from the dockets in these matters. In accordance with the accompanying Opinion, the Commonwealth shall file redacted and unredacted versions of its Detailed Status Reports within 30 days of this Order.

 

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita