J-A20002-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAKALA CHANTEL GOTELL | : | |
| | : | |
| Appellant | : | No. 1129 WDA 2019 |

Appeal from the Judgment of Sentence Entered July 22, 2019
In the Court of Common Pleas of Beaver County Criminal Division at
No(s): CP-04-CR-0000393-2018

BEFORE: BOWES, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.: **FILED FEBRUARY 24, 2021**

Shakala Chantel Gotell appeals from the judgment of sentence of five to ten years of imprisonment imposed following her conviction of aggravated assault, aggravated assault—victim less than thirteen, endangering welfare of children ("EWOC"), simple assault, and recklessly endangering another person ("REAP"). We affirm.

On August 19, 2017, Appellant transported her approximately six-month-old son to Heritage Valley Hospital in Beaver, Pennsylvania with a spiral fracture on his left arm. The child was subsequently transported to Children's Hospital of Pittsburgh and admitted. The medical personnel suspected child abuse and noted that Appellant's explanation for her son's injury, *i.e.*, that his two-year-old sibling twisted the arm, was not plausible. Subsequent examinations of the child's limbs revealed six additional injuries in varying

stages of healing. The ensuing ChildLine investigation led to the aforementioned criminal charges.

On May 18, 2018, Appellant filed an omnibus pretrial motion challenging, *inter alia*, the trial court's jurisdiction to decide the case based on the locus of the alleged abuse. **See** 18 Pa.C.S. § 102(a)(1) (criminal defendants may be subjected to the jurisdiction of Pennsylvania courts if, *inter alia*, "the conduct which is an element of the offense or the result of which is such an element occurred within this Commonwealth"). Appellant's underlying premise was that the Commonwealth could not sustain its statutory burden of proving that all of the child's injuries occurred in Pennsylvania as opposed to Ohio, where the family had recently traveled. Following the preliminary hearing, the trial court determined that it had jurisdiction over the criminal prosecution because the Commonwealth established by a preponderance of the evidence that the abuse occurred in Pennsylvania. As it relates to the Appellant's present assertions, the court included a footnote explaining,

> At the present stage of this proceeding, the Commonwealth need not prove beyond a reasonable doubt that the offense occurred within the state of Pennsylvania. However, if there is a real question as to the location of the offense at the close of evidence, the question of where the alleged offense occurred shall be submitted to the jury[.]

Memorandum Opinion and Order, 7/20/18, 5 n.17.

During the subsequent jury trial, Jennifer Clarke, M.D., a board certified child abuse pediatrician at Children's Hospital of Pittsburgh testified as an

- 2 -

expert in child abuse. N.T., 10/31/18, at 16. Dr. Clarke stated that Appellant explained that the family had been in Ohio and the day after returning to Pennsylvania, Appellant noticed her two-year-old daughter wrenching the victim's arm. *Id*. at 20-21. However, Dr. Clarke did not believe that the proffered mechanism of injury was plausible. Instead, she believed that the child was the victim of physical abuse. *Id*. The trial court summarized the relevant potions of Dr. Clarke's testimony as follows:

> An x-ray of the victim's left arm taken on August 19, 2017, showed an acute spiral fracture and an additional fracture towards the upper part of his arm towards his shoulder[.] Dr. Clarke further testified that in order to cause a spiral fracture, "there has to be some kind of twisting force to the arm." [She stated] that this type of fracture could not have been caused by the victim falling or by the victim's two year old sibling as described by [Appellant].
>
> . . . .
>
> Dr. Clarke testified that the victim suffered a total of seven (7) fractures to his arms and legs that were all at different stages of healing at the time of the examination, indicating that the various injuries occurred at different times in the past. She testified that the remaining six (6) factures [other than the spiral fracture that precipitated the hospitalization] occurred between five (5) days to two (2) weeks prior to the time that the x-rays were taken on August 19, 2017.

Trial Court Opinion, 9/24/19, at 5-6. She opined that the spiral fracture occurred sometime in the three days preceding her examination. N.T., 10/31/18, at 28.

The Commonwealth also presented the testimony of Tom Linko and Denise Dymond, two caseworkers from Beaver County Children and Youth

Services ("BCCYS").[1]  Tom Linko was the on-call caseworker, who first interviewed Appellant about her son's injuries.  Regarding Appellant's issues concerning whether the evidence established when and where the abuse occurred, Mr. Linko testified that Appellant relayed to him the same implausible explanation for the acute spiral fracture that she provided to Dr. Clarke.  That is, while at home in New Brighton, Pennsylvania, on August 18, 2017, Appellant observed her two-year-old daughter jerk on the victim's arm.  N.T. 10/30/18, at 143-45.  After the subsequent full body scan revealed the child's older injuries, Mr. Linko re-interviewed Appellant, who confirmed that she was her son's only caregiver, and she denied the existence of any other injuries.  *Id*. at 146, 147-48.

Ms. Dymond's testimony primarily concerned the procedural aspects of the dependency proceedings triggered by the ChildLine report.  Significantly, however, Ms. Dymond recounted Appellant's explanation that her daughter yanked the victim's arm on Friday, August 18, 2017, while at home in New Brighton and that Appellant transported the victim to the hospital the following day.  *Id*. at 205-06.

At the close of the evidence, Appellant neglected to either request that the court charge the jury about the Commonwealth's burden of proving

---

[1] The Commonwealth presented a third caseworker, Amy Frederick, who testified about the agency's post-placement involvement with the family.  As Ms. Fredrick's testimony is not pertinent to the issues that Appellant argues on appeal, we do not reiterate it herein.

jurisdiction in Pennsylvania or object to the trial court's failure to place that matter in front of the jury. The jury convicted Appellant of the five offenses described above, and on December 19, 2018, the court imposed five to ten years imprisonment for the felony aggravated assault, a concurrent term of one to five years for EWOC, and no further penalties on the remaining counts.

This appeal followed the denial of post-sentence motions, including the assertion that the verdicts were against the weight of the evidence.[2] Both the trial court and Appellant complied with Pa.R.A.P. 1925. Appellant presents six questions for our review, which we reorder for ease of disposition:

> I. Whether the trial court abused its discretion in failing, *sua sponte*, to specifically include an instruction that the Commonwealth prove beyond a reasonable doubt that [Appellant's] conduct caused all fractures, including the spiral fracture, within the Commonwealth of Pennsylvania to find [Appellant] guilty on any count of the information, when it knew the pretrial court reserved decision till [sic] trial, and there is a real question as to the location of occurrence of the spiral fracture?
>
> II. Whether record evidence that the act causing the inclusive spiral fracture occurred outside the Commonwealth renders the evidence insufficient to support the finding that all of the actions of [Appellant] causing all of the several fractures of the victim (including the inclusive spiral fracture) occurred within the Commonwealth beyond a reasonable doubt mandating judgment of acquittal on every count?
>
> III. Whether record evidence that the acts causing the several older fractures could have occurred during the six month life of

_____

[2] On July 23, 2019, the trial court vacated the one-to-five-year sentence for EWOC, reduced the grading of the offense to a misdemeanor of the first degree, and imposed a concurrent sentence of three to twenty-seven months imprisonment. The imposition of the concurrent penalty did not reduce the aggregate term of imprisonment.

the victim, but prior to the charged period between August 17-19, 2017, renders the evidence insufficient to support the finding that all of the actions of [Appellant] causing all of the several fractures of the victim (including the several older fractures) occurred within the "in and around the date charged" period between August 17-19, 2017, as specifically alleged in the Information beyond a reasonable doubt mandating judgment of acquittal on every count?

IV. Whether even if the record evidence was sufficient to support the finding that all of the actions of [Appellant] causing all of the several fractures of the victim (including the inclusive spiral fracture) occurred within the Commonwealth beyond a reasonable doubt, the presenting spiral fracture being caused within the Commonwealth was against the weight of the record evidence mandating judgment of acquittal on every count?

V. Whether even if the record evidence was sufficient to support the finding that all of the actions of [Appellant] causing all of the several fractures of the victim (including the several older fractures) occurred between August 17-19, 2017, beyond a reasonable doubt, the several older fractures being caused between August 17-19, 2017, as specifically alleged in the information, was against the weight of the record evidence mandating judgment of acquittal on every count?

VI. Whether the testimony from a CYS caseworker of her opinion that [Appellant] was inattentive to the victim during her hospital visit with them at the highly structured hospital setting while the victim was under the care and supervision of CYS and hospital personnel, was relevant to whether [Appellant] violated a duty of care, protection or support of the victim (when the charged criminal conduct in the information was limited to causing bodily injury to the victim) and it's [sic] admission an abuse of trial court discretion injecting prejudicial non-prosecutorial governmental opinion of [Appellant] being unfit to care for her children based on conduct after the criminally charged conduct?

Appellant's brief at 5-6 (emphases and unnecessary capitalization omitted).

At the outset, we address Appellant's assertion that the trial court abused its discretion in failing to instruct the jury, *sua sponte*, that the

Commonwealth was required to prove beyond a reasonable doubt that Appellant inflicted the injuries in Pennsylvania. She styles this charge as the "jurisdictional instruction."[3] *Id*. at 16, 35-41. Appellant's argument is predicated on the above-referenced footnote seventeen in the court's pretrial memorandum opinion explaining the decision to deny the omnibus pretrial motion. In short, Appellant asserts that the trial court "at least implicitly acknowledged that it was obliged to provide the instruction at trial without further request." Appellant's brief at 35-36 (footnote omitted).

Typically, the failure to raise specific and timely objection to particular jury instruction results in waiver. *Commonwealth v. Forbes*, 867 A.2d 1268, 1274 (Pa.Super. 2005); Pa.R.A.P. 302(b) (providing that for an issue regarding the charge to the jury to be reviewable, a "[s]pecific exception shall be taken to the language or omission complained of"). Nevertheless, because issues relating to a court's subject matter jurisdiction are non-waivable, Appellant's failure to request the "jurisdictional instruction" during the trial or invoke the pretrial order upon which she currently relies is not fatal. *See*

---

[3] Notwithstanding Appellant's reference to the "jurisdictional instruction," there is no Pennsylvania Suggested Standard Criminal Jury Instruction relating to jurisdiction because, as we explain in the body of this memorandum, jurisdiction typically involves a legal issue rather than a determination of fact for the jury. We interpret Appellant's references to the "jurisdictional instruction" as shorthand for her objection to the trial court's decision to forgo submitting the issue to the jury under the circumstances of this case.

***Commonwealth v. Duden***, 473 A.2d 614, 620 (Pa.Super. 1984) (treating

venue as an issue of subject matter jurisdiction and declining to find waiver

where appellant neglected to request jury charge on jurisdiction because the

issue of subject matter jurisdiction cannot be waived).[4]  Hence, we address

the merits of Appellant's claim that that the trial court erred in providing the

jurisdictional instruction *sua sponte*.

> The following legal principles guide our review.

> In examining jury instructions, our standard of review is to
> determine whether the trial court committed a clear abuse of
> discretion or an error of law controlling the outcome of the case.
> A charge will be found adequate unless the issues are not made
> clear, the jury was misled by the instructions, or there was an
> omission from the charge amounting to a fundamental error.
> Moreover, in reviewing a challenge to a jury instruction the entire
> charge is considered, not merely discrete portions thereof.  The
> trial court is free to use its own expressions as long as the
> concepts at issue are clearly and accurately presented to the jury.

***Commonwealth v. Bradley***, 232 A.3d 747, 759 (Pa.Super. 2020) (cleaned

up).

> As this Court restated in ***Duden***, ***supra*** at 621 (citation omitted),

"[j]urisdiction is a legal issue and therefore is not normally a concern for the

---

[4] To the extent that the ***Duden*** Court equated venue with jurisdiction, our Supreme Court subsequently abrogated that aspect of the court's rationale. ***See Commonwealth v. Bethea***, 828 A.2d 1066, 1074-75 (Pa. 2003) ("Subject matter jurisdiction and venue are distinct.  However, since jurisdiction references the power of a court to entertain and adjudicate a matter while venue pertains to the locality most convenient to the proper disposition of a matter, venue can only be proper where jurisdiction already exists.").  The High Court's clarification did not alter the ensconced principle that issues relating to subject matter jurisdiction cannot be waived.

jury. However, in those infrequent cases where jurisdiction depends upon the resolution of disputed facts, it is within the province of the jury to resolve the issue under proper instructions, and failure to give such instructions may constitute reversible error." *Id*. In contrast, the court is not required to submit the issue to the jury where the facts underlying jurisdiction are not in dispute. *Id*.

Contrary to Appellant's characterization of the trial court's pretrial comment regarding the Commonwealth's burden of proof at trial, the court's statement was conditional, *i.e.*, "if there is a real question as to the location of the offense at the close of evidence," then the question would be presented to the jury. *See* Memorandum Opinion and Order, 7/20/18, at 5 n.17. Hence, the trial court did not suggest that it would provide an instruction on the matter *sua sponte*. It merely acknowledged the longstanding principle that the factfinder must determine any questions of fact that contribute to the conviction, including the locus of the offense.[5]

_____

[5] The Pennsylvania Crimes Code provides as follows in relation to its territorial applicability:

> [A] person may be convicted under the law of this Commonwealth of an offense committed by his own conduct or the conduct of another for which he is legally accountable if either:
>
> (1) the conduct which is an element of the offense or the result which is such an element occurs within this Commonwealth;[or]
>
> . . . .

For the reasons that the Honorable Mitchell P. Shahen set forth between pages eleven and nineteen of the opinion entered on September 24, 2019, we conclude that the "jurisdictional instruction" was not warranted because there was no particularized question of fact concerning the locus of the offense to present to the jury. Stated plainly, the trial court reasoned that the Commonwealth charged the offenses as one continuous criminal episode that began in Pennsylvania and culminated in Pennsylvania on August 18, 2017. It continued that, as supported by the expert testimony of Dr. Clarke and the lay testimony of the child abuse investigator, the child sustained the older injuries in Pennsylvania prior to the family's trip to Ohio and suffered the most recent fracture on August 18, 2017, upon their return to Pennsylvania. Hence, notwithstanding Appellant's protestations to the contrary, "Appellant was not entitled to the jury instruction with regard to jurisdiction." Trial Court Opinion, 9/24/19, at 15. We adopt Judge Shahen's cogent and well-reasoned analysis as our own, and reject Appellant's claim of error on that basis.

Appellant's next two arguments assert that the Commonwealth presented insufficient evidence to sustain the five convictions beyond a

---

(5) the offense consists of the omission to perform a legal duty imposed by the law of this Commonwealth with respect to domicile, residence or a relationship to a person, thing or transaction in this Commonwealth[.]

18 Pa.C.S. § 102(a)(1), (5).

reasonable doubt.  The only element of the offenses that Appellant challenges on appeal is that concerning the locus and date of the crimes.  Specifically, reviving her contentions regarding the lack of the "jurisdictional instruction," she contends that the Commonwealth did not establish that the abuse was inflicted in Pennsylvania near the approximate dates of August 17-19, 2017 as listed in the information.[6]  **See** Appellant's brief at 5, 17, 22.

Our standard of review applicable to Appellant's sufficiency claims is as follows.

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary.  In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt.  [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence.  The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence.  Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

**Commonwealth v. Williams**, 176 A.3d 298, 305-06 (Pa.Super. 2017) (citations and quotation marks omitted).

_____

[6] Inasmuch as the Commonwealth must prove the conduct and circumstances that establish jurisdiction, it is an inherent element of an offense.  **See** 18 Pa.C.S. § 103 ("Element of an offense").  As Appellant's present claim does not implicate the remaining elements of the five underlying convictions, we do not enumerate them herein.

Appellant's claims fail. First, Appellant concedes that the Commonwealth presented evidence concerning when and where the spiral fracture occurred, *i.e.*, "The trial testimony provided conflicting evidence as to both when and where the diagnosed most recent spiral fracture injury of the left humerus occurred." Appellant's brief at 18. As the Commonwealth adduced evidence that the spiral fracture occurred in Pennsylvania on August 18, 2017, and the jury was free to accept that evidence, her challenge to the sufficiency of the evidence fails. Appellant's characterization of "conflicting evidence" ignores our standard of review, which requires that we view the evidence in the light most favorable to the Commonwealth as verdict winner. *See Williams*, *supra* at 305-06

Second, recognizing the patent defect in her sufficiency of the evidence claim, Appellant contends that the Commonwealth's evidence regarding the location of the crimes was unreliable absent the proposed jury instruction regarding the factual chain of events. She argues,

> Without that jurisdictional instruction, the jury was left with merely focusing on if [Appellant] caused all the fractures (including the last spiral fracture) and not where she may have committed the last spiral fracture as charged. The jury's verdict was compromised and its reliability in question without assurance that it made the decision as to where that last spiral fracture occurred beyond a reasonable doubt.

Appellant's brief at 19. For the following reasons, we disagree.

Our determination whether the Commonwealth presented sufficient evidence to establish the elements of the various crimes is not dependent on

a jury instruction or the jury's rendering a factual finding as to each separate element. Instead, our inquiry relates solely to the quantum of evidence that the Commonwealth adduced during the trial. *See Williams*, *supra* at 305-06 ("In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, . . . were sufficient to prove every element of the offense beyond a reasonable doubt."). Accordingly, it is of no moment to the present issue that the trial court did not specifically direct the jury to determine the locus of the offense.

Upon conducting the proper review, we conclude that the Commonwealth presented evidence to sustain the determination that Appellant inflicted the injuries in Pennsylvania on the approximate dates listed in the information. As noted *supra*, the Commonwealth established that Appellant assaulted her small child in their New Brighton home on August 18, 2017, and that older fractures that had been inflicted between five and fourteen days earlier—a period that necessarily excludes the three days that the family was in Ohio between August 15 and 17. N.T., 10/31/18, at 20-21, 34-35. Since the certified record confirms that the Commonwealth presented sufficient evidence to establish beyond a reasonable doubt both the dates that the injuries were sustained and the locus of the crimes, we reject Appellant's challenges to the sufficiency of the evidence.

Appellant's fourth and fifth issue assert that the verdict was against the weight of the evidence because the court did not provide the "jurisdictional

instruction."[7] Like the foregoing challenge to the sufficiency of the evidence, a weight of the evidence claim is not a means to resurrect Appellant's fruitless assertion that the trial court erred in failing to submit the question of jurisdiction for the jury.

The following principles apply to our review of a challenge that the weight of the evidence will not sustain the verdict.

> Appellate review of a weight claim is a review of the [trial court's] exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Commonwealth v. Clay***, 64 A.3d 1049, 1054–55 (Pa. 2013).

The trial court, having reviewed all of the evidence in connection with its disposition of Appellant's sufficiency challenge, offered the following analysis of Appellant's claim that the evidence was against the weight of the evidence.

> Based on th[e Commonwealth's] evidence, the jury rendered a verdict finding that Appellant caused the injuries to [the child]. This verdict was supported by the medical testimony

---

[7] While Appellant asserts she is entitled to an arrest of judgment, which is the remedy when evidence is insufficient to sustain a conviction, "[w]here the verdict is against the weight of the evidence, the proper remedy is a new trial." ***Commonwealth v. Ruffin***, 463 A.2d 1117, 1118 n.5 (Pa.Super. 1983).

and evidence, along with testimony from the additional witnesses at trial. The jury assessed the credibility of all the witnesses and found the evidence was sufficient to support the conclusion that the injuries were non-accidental and was caused by the Appellant. Likewise, the verdict is also not against the weight of the evidence. The verdict shows that the jury found the Commonwealth's witnesses more compelling, and that the testimony, on its own, supports the conviction finding Appellant's actions cause[d] the victim's injuries.

. . . .

[T]his conviction does not shock one's sense of justice, and is not against the weight of the evidence presented. Thus, Appellant's alleged errors are without merit.

Trial Court Opinion, 9/24/19, 27-28.

Our review of the certified record reveals no inconsistencies in the evidence or need for speculation on the part of the jury. As the trial court highlights, the Commonwealth's evidence, if believed, established that Appellant, who was the child's sole caregiver, physically abused her son in Pennsylvania on August 18, 2017, and between the dates of August 13 and August 4, 2017—the latter dates reflecting the five-to-fourteen-day period that Dr. Clarke opined that the older injuries were inflicted. Accordingly, the record reveals no abuse of discretion on the part of the trial court in holding that the verdict did not shock its conscience. Therefore, Appellant is entitled to no relief from this Court on her weight-of-the-evidence claim.

Appellant's final claim is that the trial court erred in permitting a Commonwealth witness to testify that Appellant was inattentive to the victim while in the hospital. This contention implicates the following exchange during

the Commonwealth's direct examination of Ms. Dymond, the CYS case worker who interacted with Appellant while the child was in the hospital.

> Q.    And when you were interacting with the[ family] did you ever observe the children at all?
>
> A.    Only [on] the initial date of placement and the supervised visit that I completed the day of the shelter hearing.
>
> Q.    Anything noteworthy from either of those interactions about either children?
>
> A.    The initial date [of] placement when I met with [Appellant] at the hospital she wasn't very attentive to [the victim].  She, there was a time where he had-

N.T., 10/30/18, at 218-19.  Appellant objected to the testimony on the basis of relevance, and the Commonwealth countered, "Her ability to care for the children is absolutely relevant.  This is something [Ms. Dymond] directly observed, her interactions with the child who the Commonwealth is alleging she assaulted." *Id*.

During the subsequent sidebar, Appellant asserted that the witness's observation of Appellant's behavior at the hospital "does not lead to any evidence that is relevant to any of the criminal charges.  All this is doing is bad mouthing my client and . . . indicating that because she [wa]s not an attentive mother at that moment she has to be guilty." *Id* at 221-22.  In overruling the relevancy objection, the trial court highlighted that Appellant's counsel dedicated a substantial portion of an earlier cross-examination to "saying how concerned [Appellant] was[.]" *Id*. at 222.  When the questioning resumed, Ms. Dymond testified, "I did not observe [Appellant] hold him at all,

- 16 -

and I, when [the child] was getting blood drawn, he was crying, and she stayed seated on the couch on the other side of the room while he was in the crib, didn't go over to comfort him." *Id*. at 222-23.

The trial court expounded upon its evidentiary decision in the Rule 1925(a) opinion as follows, "In this instance, the court determined that this testimony was relevant as the Appellant's ability to care for the children was clearly probative as to whether the Appellant acted towards the victim in a manner that was within the standard of normal care, which is an element of the [EWOC] charge." Trial Court Opinion, 9/24/19, at 33.

Appellant's argument essentially disputes this finding, contending that "While Dymond's testimony may have been relevant if the manner of committing the endangerment charge was the failure [to provide] ongoing physical or emotional needs, it was not relevant to the manner of the endangerment crime as charged in the [i]nformation - causing physical injury to the victim in the past." Appellant's brief at 33 (footnote omitted). Appellant's assertion is fruitless.

Our standard of review is as follows:

> In reviewing a trial court's ruling on the admissibility of evidence, our standard of review is one of deference. It is firmly established, questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the court's decision on such a question absent clear abuse of discretion.

> Additionally, it is not sufficient to persuade the appellate court that it might have reached a different conclusion; it is necessary to show an actual abuse of the discretionary power. An

abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion [that] overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Sweitzer*, 177 A.3d 253, 260–61 (Pa.Super. 2017) (cleaned up).

As our High Court has explained, "[e]vidence is admissible if it is relevant—that is, if it tends to establish a material fact, makes a fact at issue more or less probable, or supports a reasonable inference supporting a material fact—and its probative values outweighs the likelihood of unfair prejudice." *Commonwealth v. Hicks*, 156 A.3d 1114, 1125 (Pa. 2017) (citations omitted). *See also* Pa.R.E. 402 ("All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible."); Pa.R.E. 401 ("Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action."); Pa.R.E. 403 ("The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").

The crux of Appellant's complaint is that Ms. Dymond's comment was irrelevant. We disagree. EWOC is defined, in pertinent part, as "knowingly endanger[ing] the welfare of a child by violating a duty of care, protection, or support." 18 Pa.C.S. § 4304(a)(1). Contrary to Appellant's contention,

whether Appellant caused physical injury is not an element of EWOC.[8] Instead, the offense addresses the duty of care required of a person who is responsible for a child's wellbeing. Thus, we reject Appellant's argument that the court should have barred Ms. Dymond's testimony because it was irrelevant to the question relating to whether Appellant actually inflicted the injury.

As the trial court noted in admitting the testimony, Ms. Dymond's statement regarding Appellant's inattentiveness to her child's suffering was a fair response to Appellant's portrayal of herself as a dutiful parent. In addition, the evidence of her apathy cultivated an inference that she was capable of violating the duty of protection owed to the child by causing the terrible injuries that she was charged with committing. Since the jury was free to draw this inference from Appellant's behavior or disregard Ms. Dymond's testimony entirely, there was little danger of the probative value of the evidence being outweighed by unfair prejudice, confusion, or delay. Thus, mindful of our standard of appellate review, we cannot conclude that the trial court abused its discretion in admitting the challenged evidence under these circumstances. No relief is due.

Judgment of sentence affirmed.

---

[8] While causing injury is not an element of EWOC, depending on the underlying circumstances, a finding of "substantial risk of death or serious bodily injury" could increase the grading of the offense to a felony of the second or third degree. *See* 18 Pa.C.S. § 4304(b)(1)(iii) and (iv).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>2/24/2021</u>

IN THE COURT OF COMMON PLEAS OF BEAVER COUNTY,
PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA   :

                                      :

            vs.                         :

                                        :

SHAKALA C. GOTELL                 :

No. 393 of 2018

## **RULE 1925 (a) OPINION**

Shahen, Mitchell P.                              SEPTEMBER 24, 2019

### **INTRODUCTION**

This Opinion is issued as required by Rule 1925(a) of the Pennsylvania Rules of Criminal Procedure.

The relevant procedural history of this case is as follows. By Criminal Information dated March 21, 2018, the Appellant was charged as follows, one (1) Count of Aggravated Assault (F1); one (1) Count of Aggravated Assault – Victim Less Than 13 and Defendant 18 or older (F1); one (1) Count of Endangering the Welfare of Children (F3); one (1) Count of Simple Assault (M1); and one (1) Count of Recklessly Endangering Another Person (M2). Each of these charges related to injuries sustained by an infant child of the Appellant.

A preliminary hearing was held on March 2, 2018, where the Commonwealth presented testimony from Denise Dymond, an intake caseworker at Beaver County

Children and Youth Services ("BCCYS"), and Jennifer Clarke, M.D., a Child Abuse Pediatrician with the Child Advocacy Center at Children's Hospital of Pittsburgh.

Appellant filed an Omnibus Pre-Trial Motion on May 18, 2018. In the motion, Appellant challenged this Court's jurisdiction to decide the case; petitioned for writ of habeas corpus and dismissal of all charges; requested this Court to suppress Appellant's statements to BCCYS; and requested a competency evaluation. A hearing on this motion was held on June 5, 2018, at which time the Commonwealth presented testimony from Denise Dymond, the BCCYS caseworker. The Court denied Appellant's Omnibus Pre-Trial Motion on July 20, 2018.

Jury Selection commenced on October 29, 2018 and the Court conducted Trial from October 30 through November 1, 2018. On November 1, 2018, the Jury returned a verdict finding Appellant guilty of all charges. Appellant was sentenced on December 19, 2018 to five (5) to ten (10) years in a State Penal or Correctional Institution on Count II, one (1) to five (5) years in a State Penal or Correctional Institution on Count III, with no further penalty for Counts I, IV, and V due to merger. The sentence at Count III was to run concurrent to the sentence at Count II.

Following sentencing, the Appellant filed a Post-Sentence Motion for Relief alleging four (4) points of errors and requesting an extension of time to file an amended Post-Trial Motion pending the receipt of trial transcripts. Appellant's initial Post-Sentence Motion alleged the following four (4) points of errors: (1) the Court erred in denying Appellant relief in the Omnibus Pre-Trial Motion; (2) the Court erred in denying

various motions made by Appellant during trial; (3) the Court erred in granting various motions for the Commonwealth during trial; and (4) the jury's guilty verdicts were against the weight of the evidence. On January 4, 2019, this Court granted Appellant's request for an extension of time until February 15, 2019 to file any Supplemental Post-Trial Motions, set a briefing schedule, and scheduled Argument on the Post-Sentence Motion for March 1, 2019. Trial Counsel, Attorney Gerald Benyo, was granted leave to withdraw and Appellant was assigned a new attorney through the Beaver County Office of Conflicts Counsel on January 10, 2019. However, original Beaver County Conflicts Counsel withdrew due to a conflict and new (and current) counsel, Attorney Dennis DiMartini, was assigned on January 28, 2019.

On February 19, 2019, Appellant filed a Motion for Extension of time to file a Post-Sentence Application *Nunc Pro Tunc*. On February 20, 2019, this Court granted Appellant an extension of time until March 22, 2019 to file any Supplemental Omnibus Post-Sentence Applications, set a briefing schedule, and scheduled Argument on Post-Sentence Applications to be held on April 18, 2019. On April 1, 2019, after the deadline for filing had passed, Appellant filed a Superseding Supplemental Omnibus Post-Sentence Application *Nunc Pro Tunc* containing three (3) requests for relief: (1) Motion in Arrest of Judgment and/or Judgment of Acquittal; (2) Motion for a New Trial, and (3) Motion for Modification of Sentence. This pleading was accepted by the Court and the issues in this pleading were then considered during the post-sentence proceedings. The Appellant did not file a brief. However, the Superseding Supplemental Omnibus Post-

Sentence Application filed on behalf of the Appellant cited authority in support of the Appellant's claims. The Commonwealth filed a brief in opposition to the Appellant's Motions on April 4, 2019.

The Commonwealth filed a Supplemental Answer to Appellant's Supplemental Omnibus Post-Sentence Application on April 22, 2019. This Court granted Appellant's Request to Modify the Sentence imposed on Count III **ONLY**, Endangering the Welfare of a Child as a Third Degree Felony, and denied all other requests contained in the Superseding Supplemental Omnibus Post-Sentence Application.

Appellant was resentenced with regard to Count III only on July 23, 2019 to three (3) months to twenty-seven (27) months imprisonment in a State Penal or Correctional Institution for Count III, Endangering the Welfare of a Child graded as a Misdemeanor 1.

The Appellant filed the instant Appeal on July 26, 2019. This Court Ordered Appellant to file a Concise Statement of Matters Complained of on Appeal on July 29, 2019. The Appellant filed the Concise Statement on August 14, 2019 consisting of nine (9) alleged errors, challenging the sufficiency of the evidence, the weight of the evidence, the jurisdiction of the Court, and various trial evidentiary issues.

## FACTUAL BACKGROUND

On approximately August 19, 2017, Petitioner took the victim, A.C., her six (6) month old child, to Heritage Valley Beaver hospital for medical treatment. Because of the severity of the child's injuries, he was then transported to Children's Hospital on August 19, 2017, and was admitted overnight.

As a result of the hospital visit, on August 19, 2017, BCCYS received a ChildLine Report of suspected child abuse from the Heritage Valley Beaver. The report identified a five-month-old black male as the victim and identified the suspect as Shakala Gotell. On August 20, 2017, Jennifer Clarke, M.D., ("Dr. Clarke") examined the child for the first time. This examination took place at Pittsburgh Children's Hospital.

An x-ray of the victim's left arm taken on August 19, 2017, showed an acute[1] spiral fracture and an additional fracture towards the upper part of his arm towards his shoulder, which Dr. Clarke described as "metaphyseal fracture or a corner fracture," which is also referred to as a "bucket fracture."[2] Dr. Clarke further testified that in order to cause a spiral fracture, "there has to be some kind of twisting force to the arm."[3] Dr. Clarke further testified that this type of fracture could not have been caused by the victim falling or by the victim's two year old sibling as described by Petitioner.[4]

Dr. Clarke testified that this type of fracture would cause "substantial pain" to the victim.[5] Dr. Clarke specifically testified that with every manipulation of the victim's arm the victim would experience pain.[6] Dr. Clarke testified that the fracture suffered by the victim was something that would happen outside the normal standard of care.[7]

Dr. Clarke testified that the victim suffered a total of seven (7) fractures to his arms and legs that were all at different stages of healing at the time of the examination,

---

[1] Dr. Clarke testified that an acute fracture means there is not a lot of healing around the fracture. Trial Transcript, Vol.III, October 31, 2018, p. 28 [hereinafter TT, Vol. III]
[2] Id. at 32.
[3] Id. at 29.
[4] Id.
[5] Id. at 30.
[6] Id.
[7] Id. at 29.

indicating that the various injuries occurred at different times in the past.[8] She testified that the remaining six (6) factures occurred between five (5) days to two (2) weeks prior to the time that the x-rays were taken on August 19, 2017.[9]

Thomas Linko, BCCYS caseworker, testified with regards to his participation in the investigation.[10] Mr. Linko was the caseworker on call when the Childline report came in from Beaver Medical Center.[11] Mr. Linko went to Children's Hospital to meet with medical providers, the child, and the Appellant.[12] Mr. Linko arrived at Children's Hospital approximately thirty (30) minutes after the Appellant and victim arrived.[13] Mr. Linko testified that the procedure when arriving on location of a child line report is as follows:

> [T]alk to medical personnel to see what the status is of the child, and make a preliminary finding that the case might potentially result in a report for abuse. Then we would, we would then refer to doing a Miranda Rights for the person so that they're aware of their rights and then proceeding with just staying in contact with the medical personnel, getting updates through the course of time that we are there.

[T.T., Vol. II, p. 142]. Mr. Linko confirmed this is the procedure he followed on that particular date.[14] Mr. Linko read the Appellant her Miranda Rights and the Appellant agreed to speak with him after being read her rights.[15] Mr. Linko testified that during his conversation with the Appellant at Children's Hospital she told him:

---

[8] Id. at 34-35.
[9] Id. at 59.
[10] Trial Transcript, Vol. II, October 30, 2018, pp. 130-183. [hereinafter T.T., Vol. II]
[11] Id. at 133.
[12] Id. at 139.
[13] Id. at 140-141.
[14] Id.
[15] Id. at 142-143.

[T]he child had received possibly an injury from the older sister who was two years old, and it had occurred the, I want to say the day before. That would have been the 18th. At the time when [Appellant] was preparing to do, to take a shower, [Appellant] had prepared the baby in a safe spot on her bed with pillows and what have you, and whenever she came out of the shower indicated that the two-year-old was climbing around on the bad and actually paying with the five-month-old.

[T.T., Vol II, p. 143-144]. He said that the Appellant noted "that at the point that [Appellant] had come out of the shower [Appellant] had noted that, that the two-year-old was actually grasping [victim's] arm at that point."[16] Mr. Linko testified that Appellant stated that was the point she noticed victim's arm appeared "floppy and swollen."[17] Mr. Linko testified that Appellant then took the children for a walk and noticed victim's arm was "just hanging and not really responding."[18] Mr. Linko testified that is when Appellant advised she decided to take victim to the Medical Center for examination.[19] Mr. Linko stated that Appellant advised this occurred on Friday at her home in New Brighton.[20] Mr. Linko testified that Appellant did advise him of a trip to Warren, Ohio where she was visiting the children's father's cousin.[21] Mr. Linko testified that the Appellant advised that she returned home from Ohio the morning before the visit to the hospital.[22] Mr. Linko testified that the incident of the two-year-old allegedly tugging on

---

[16] Id. at 144.
[17] Id.
[18] Id. at 144-145.
[19] Id. 145.
[20] Id.
[21] Id.
[22] Id. at 165.

the victim's arm, as described by the Appellant, occurred in New Brighton, Beaver County, Pennsylvania, and not in Ohio.[23]

Mr. Linko became aware of additional injuries to the victim while at the hospital.[24] Mr. Linko testified that around 9:30 P.M. on the evening of August 19, 2017 he was advised that old injuries were discovered as the result of a full body scan performed on the victim around 8:00 or 8:30 P.M. on that same day.[25] The Appellant denied knowledge of any of the older injuries.[26] Mr. Linko inquired whether or not the victim had any other caretakers and the Appellant responded that she was the sole caregiver of the victim.[27] Mr. Linko testified the victim was admitted for further testing and observation after the discovery of the additional injuries.[28] Mr. Linko testified that the case was then transferred to BCCYS caseworker, Denise Dymond, on Monday, August, 21, 2017.[29]

BCCYS caseworker, Denise Dymond, also testified at trial.[30] Ms. Dymond is a BCCYS intake caseworker. Her position as an intake caseworker requires her to perform the initial investigation to determine whether an allegation is valid and whether or not a family needs services.[31] Ms. Dymond met with the Appellant at Children's Hospital, and provided Appellant with the paperwork for a Dependency Shelter Care hearing that was scheduled due to the allegation of abuse.[32] Ms. Dymond advised Appellant of her right to

---

[23] Id.
[24] Id. at 146.
[25] Id.
[26] Id. at 146-147.
[27] Id. at 147-148.
[28] Id. at 147-150.
[29] Id. at 176.
[30] Id. at 189- 254.
[31] Id. 189.
[32] Id. at 191.

obtain an attorney.[33] Ms. Dymond met with the Appellant at Children's Hospital on Monday, August 21, 2017 for the first time.[34]

Ms. Dymond testified that the Dependency Shelter Care hearing is the first hearing in a Dependency matter wherein a judge hears the case and makes a determination as to whether or not to proceed with adjudication.[35] Ms. Dymond asked the Appellant questions regarding other caregivers and the identity of the victim's father.[36] Ms. Dymond testified that the Appellant denied that the victim's father lived with her although his address was the address provided on father's criminal dockets.[37] Ms. Dymond testified regarding the Appellant's response to being informed of the other fractures, wherein the Appellant again denied that these fractures existed.[38] Ms. Dymond testified that the Appellant reiterated that she was the sole caregiver of the children.[39]

Ms. Dymond testified that when the victim was released from the hospital, he was transported to the same foster home as his sibling.[40] She testified that the children both remained in the same foster home for the entire time she was overseeing the case.[41] Ms. Dymond testified that the Appellant advised her that she was in Ohio from Tuesday until Thursday, August 15, 2017 through August 17, 2017, visiting the children's father's cousin, and that she noticed that the victim was not using his arm right on Friday, August

---

[33] Id.
[34] Id. at 223.
[35] Id. at 192-193.
[36] Id. at 193.
[37] Id. at 194-195
[38] Id. at 193.
[39] Id. at 195.
[40] Id. at 195-196.
[41] Id. at 196.

18, 2017.[42] Ms. Dymond testified that the Appellant advised her that on Friday when the Appellant got out of the shower she saw the victim's two-year-old sibling was yanking on the victim's arm.[43] She testified that the Appellant then took the victim to the hospital on Saturday, August 19, 2017.[44] Ms. Dymond testified that the case was eventually transferred to another caseworker, Amy Frederick.[45]

The third BCCYS caseworker to testify was Amy Frederick.[46] Ms. Frederick is a protective caseworker with BCCYS.[47] Ms. Frederick testified that as a protective caseworker she obtains files after the intake and investigation is completed.[48] Her job is to work with the family to overcome the obstacles that led to BCCYS's involvement.[49] Ms. Frederick became involved in the case in November of 2017.[50] She testified that both children were thriving in their current placement and the victim had not obtained any new injuries since the placement in foster care.[51] Ms. Frederick testified that she assisted the Appellant with completing the services required of her by BCCYS.[52] Ms. Frederick testified that she never asked the Appellant directly about the victim's injuries.[53] Ms. Frederick testified with regards to the victim's ongoing medical care, such as his receipt of in-home early intervention services, occupation therapy and physical therapy.[54] Ms.

[42] Id. at 205.
[43] Id. at 206.
[44] Id.
[45] Id. at 211-212.
[46] Id. at 255- 289.
[47] Id. at 255.
[48] Id.
[49] Id.
[50] Id. at 257.
[51] Id. at 258.
[52] Id. at 259.
[53] Id.
[54] Id. at 262.

Frederick also testified that the victim is experiencing a 25 percent delay in the areas of adaptive and communication due to the severity of his injuries.[55]

## ISSUES

Appellant's concise statement contains nine (9) issues for review, which we have re-ordered and consolidated for ease of disposition.

1. Did the court lack subject matter jurisdiction over the crimes?

2. Should the court have *sua sponte* given the jury instructions delineating the need to find, beyond a reasonable doubt, that the bodily injuries to the victim occurred in Pennsylvania?

3. Was the evidence insufficient to support the conviction which required bodily injury as an element because there was insufficient evidence to establish that any crime involving bodily injury as an element thereof occurred in Pennsylvania?

4. Was the evidence insufficient to support the conviction when the Criminal Information indicated the crime occurred between August 17 to 19 and the evidence suggests that the incident may have occurred outside the specified timeframe?

5. Was it error for the court to permit the testimony of Denise Dymond, a caseworker at Beaver County Children & Youth Services?

## ANALYSIS

### Jurisdiction

The Appellant avers that the Commonwealth failed to establish jurisdiction in the Commonwealth of Pennsylvania, Beaver County, because it failed to present evidence that the spiral fracture, as well as all other fractures, occurred within the Commonwealth of Pennsylvania. The Pennsylvania Superior Court has held:

---

[55] Id.

> Jurisdiction to try a person on a criminal charge lies in the courts of the state or county where the crime was committed. While some evidence of the place of the crime must be offered by the prosecution to sustain a guilty verdict, where there is a real question as the place, it is reversible error for the trial judge to refuse the defendant's request to submit that question to the jury.

**Commonwealth v. Kloss**, 253 Pa. Super. 559, 563, 385 A.2d 480, 482 (1978)(internal citations omitted).

In the instant case the Appellant did not request and did not receive a jury charge on jurisdiction. However, the question is not waived since the jurisdiction of the court is a question of subject matter jurisdiction, **Commonwealth v. Little**, 455 Pa. 163, 165-66, 314 A.2d 270, 271-72 (1974), and "[t]he lack of subject matter jurisdiction cannot be waived ... and it may be raised any time by the parties or the court, including an appellate court." **Commonwealth v. Mangum**, 231 Pa. Super. 162, 164-65, 332 A.2d 467, 468 (1974). Subject matter jurisdiction speaks to the competency of a court to hear and adjudicate the type of controversy presented. **Commonwealth v. Bethea**, 574 Pa. 100, 828 A.2d 1066, 1074 (2003). Jurisdiction is purely a question of law. **Commonwealth v. John**, 854 A.2d 591, 593 (Pa. Super. 2004). Therefore, jurisdiction is not normally a concern for the jury. **Commonwealth v. Duden**, 326 Pa. Super. 73, 86, 473 A.2d 614, 621 (1984). "However, in those infrequent cases where jurisdiction depends upon the resolution of disputed facts, it is within the province of the jury to resolve the issue under proper instructions, and failure to give such instructions may constitute reversible error." **Id. (citing, Commonwealth v. Mull**, 316 Pa. 424, 175 A.418 (1934)). In instances where the facts underlying jurisdiction are not in dispute, the rule is as follows:

There is no duty on a trial judge to charge a jury upon law which has no applicability to the presented facts. There must be some relationship between the law upon which an instruction is required and the evidence presented at trial.

**Commonwealth v. Whiting,** 409 Pa. 492, 498, 187 A2d 563, 566 (1963)(citing from

**Commonwealth v. Coleman,** 409 Pa. 492, 498, 187 A.2d 563, 566 (1963).

The law is clear that the locus of a crime is always in issue, for the court has no jurisdiction of the offense unless it occurred within the county of trial, or unless, by some statue, it need not[.] For a county to take jurisdiction over a criminal case, some overt act involved in that crime must have occurred within that county. In order to base jurisdiction on an overt act, the act must have been essential to the crime, and act which is merely incidental to the crime is not sufficient.

**Commonwealth v. Boyle,** 516 Pa. 105, 532 A.2d 306, 309-10 (1987)[56] **See, e.g.,**

**Commonwealth v. Kloss,** 253 Pa. Super. 559, 564-65, 385 A.2d 480, 483 (1978)

(finding jurisdiction properly lay within Pennsylvania courts where solicitation occurred

in Pennsylvania for a robbery committed in Ohio).

The Appellant questions whether there was enough evidence to warrant submitting

to the jury the question of where the crime was committed. The Crimes Code provides in

pertinent parts, as follows:

(a) General rule. Except as otherwise provided in this section, a person may be convicted under the law of this Commonwealth of an offense committed by his own conduct or the conduct of another for which he is legally accountable if either:
(1) the conduct which is an element of the offense or the result which is such an element occurs within this Commonwealth;
[...]

---

[56] The **Boyle** decision was later vacated and remanded on other grounds as a result of after-discovered evidence. **Commonwealth v. Boyle,** 533 Pa. 360, 625 A.2d 616 (1993).

> (5) the offense consists of the omission to perform a legal duty imposed by the law of this Commonwealth with respect to domicile, residence or a relationship to a person, thing or transaction in this Commonwealth

**18 Pa. C.S. § 102(a)(5)**. Acts committed in other states, but which are intended to produce and do produce detrimental effects within Pennsylvania, justify the Commonwealth in punishing the cause of the harm. **Commonwealth v. Giusto**, 810 A.2d 123 (Pa. Super. 2002), **appeal denied**, 820 A2d 703 (Pa. 2002).

Where there is a case involving multiple offenses in various counties, for a court to exercise jurisdiction, "the offense must constitute a single criminal episode." **Commonwealth v. Kohler**, 811 A.2d 1046, 1049 (Pa. Super. 2002)(citations omitted). "If a number of charges are logically or temporally related and share common issues of law and fact, a single criminal episode exists." **Commonwealth v. Witmayer**, 2016 Pa. Super. 164, 144 A.3d 939, 946 (2016), **reargument denied** (September 29, 2016), **appeal denied**, 169 A.3d 27 (Pa. 2017) (**citing, Kohler**, 811 A.2d at 1049)(internal quotes omitted). "While the Commonwealth bears the burden of proving facts sufficient to establish jurisdiction, it may rely upon circumstantial evidence to meet its burden." **Commonwealth v. Bradfield**, 352 Pa. Super. 466, 508 A.2d 568, 571 (1986), **appeal denied**, 513 Pa. 633, 520 A.2d 1384 (1987).

In this case, the Information charged the Appellant with causing the most recent injury to the child, the spiral fracture, as well as the other six (6) fractures. The Information did not separate each fracture into a separate Count.

For the reasons stated above, the Appellant was not entitled to the jury instruction with regards to jurisdiction. The Appellant avers that the only pre-trial and trial evidence of record was that the act causing the spiral fracture occurred outside the Commonwealth of Pennsylvania, and that there was no evidence to support the finding that the spiral fracture occurred within the Commonwealth of Pennsylvania. However, the evidence presented by the Commonwealth, specifically, the testimony of Dr. Clarke and Mr. Linko whereby testimony was clear that the most recent abuse occurred in Beaver County, Pennsylvania, where the Appellant resides, and that prior incidents of abuse suffered by the child constituted an ongoing criminal episode which began and continued in Beaver County, Pennsylvania.

The Court previously determined that jurisdiction was proper within the Commonwealth of Pennsylvania as stated in the Opinion of Honorable Harry Knafelc on July 20, 2018. The Court held that this Court had jurisdiction and the Opinion of the Court did not reserve a decision on the question of jurisdiction until trial or for post-trial consideration. The issue was never raised again by the Appellant until the filing of Post-Trial Motions.

The Court finds that the issues in **Commonwealth v. Kerrigan,** 920 A.2d 190 (Pa. Super. 2007), are similar to Appellant's issues in the instant case. In **Kerrigan,** the Appellant challenged the sufficiency of the evidence averring that the Commonwealth failed to support the conviction by establishing a vital element of the crimes of which he was convicted had occurred in the Commonwealth. The Appellant in Kerrigan raised

related challenges to the court's subject matter jurisdiction and the jury instructions regarding jurisdiction. **Id.** at 194.

In **Kerrigan**, the defendant was convicted in a jury trial of rape of a child, involuntary deviate sexual intercourse, aggravated indecent assault, and corruption of minors. **Id.** In that case, the defendant began sexually abusing the victim when she was seven (7) years old and continued until she was ten (10) years old. **Id.** The abuse began when the parties were living in New Jersey and got worse after the parties moved to Pennsylvania. **Id.** The victim was treated by a physician when she was ten (10) years old for genital warts and it was determined that the victim had HPV (human papillomavirus). **Id.** It was explained at trial by the medical expert that genital warts are transmitted primarily, although not exclusively, by "genital to genital contact." **Id.**

The victim disclosed that the defendant began touching her when she lived in New Jersey and that the abuse continued and escalated to vaginal and anal intercourse following their arrival in Pennsylvania. **Id.** The victim also testified that the abuse increased as she got older with the most frequency occurring at their last residence in Pennsylvania. **Id.**

The defendant argued that the evidence was insufficient to support his convictions which required penile penetration because the evidence was insufficient to establish that any penetration occurred in Pennsylvania. **Id.** at 194.

The defendant argued that the victim's testimony with regards to whether the abuse occurred in Pennsylvania or New Jersey was contradictory and that the jury could

do more than guess as to whether it occurred in Pennsylvania. **Id.** The Court in **Kerrigan** was unwilling to find that the testimony and evidence was so weak and inconclusive that as a matter of law the jury was unable to find that the defendant penetrated the victim in Pennsylvania and that the evidence was sufficient to support the convictions. **Id.**

The defendant, in **Kerrigan,** next argued that the trial court lacked subject matter jurisdiction over the defendant because there was insufficient evidence to support the commission of the crimes in Pennsylvania. **Id** at 196. The defendant argued that because the evidence was insufficient to establish that the penile penetration occurred in Pennsylvania that the court lacked subject matter jurisdiction over those crimes. **Id.** The Superior Court held that this argument was also without merit stating that the court of common pleas has subject matter jurisdiction to hear cases arising out of the Crimes Code. **Id.** The Court reiterated that there was sufficient evidence for the finding that the crimes involving penile penetration occurred in Pennsylvania, thus making it clear that the conduct related to the charges occurred in Pennsylvania and jurisdiction was proper in Pennsylvania. **Id.**

The third issue presented by the defendant, in **Kerrigan,** was that counsel was ineffective for failing to request a specific instruction that the Commonwealth must prove the element of jurisdiction beyond a reasonable doubt. **Id.** In **Kerrigan,** the trial court did give the following instruction:

> Remember, in this case, as in all cases, one of the very important functions of the jury is to determine the facts. **What did actually happen in Catasauqua, Lehigh County, between [Victim] and Daniel Kerrigan, if anything.**

**Id.** (emphasis in original). The defendant argued that this instruction was not adequate because it failed to instruct the jury to find beyond a reasonable doubt the alleged conduct occurred in Pennsylvania. The trial court noted that the defendant conceded that the victim was sexually abused, but that he was not the one who abused the victim. **Id.** The trial court further noted that "jurisdiction would only have been of concern if the defense made the questionable strategic decision to allege that the defendant abused [the victim] in New Jersey, but not Pennsylvania. **Id.** The Superior Court held that failure to require such an instruction in **Kerrigan** did not prejudice the defendant, as the defendant's argument at trial was that he did not abuse the victim in Pennsylvania or New Jersey, and the jury would have convicted the defendant even if the instruction were given. **Id.** at 196-197 (**citing Commonwealth v. Potts**, 388 Pa. Super. 593, 566 Af.2d 287, 295-96 (1989). The Superior Court also noted that in **Kerrigan** there was doubt as to whether an objection to jurisdiction was of any merit because there was sufficient evidence to establish that abuse involving penile penetration occurred in Pennsylvania. **Id.** at 197.

In the instant case, just as in **Kerrigan**, the Commonwealth met the necessary burden with regards to subject matter jurisdiction. There was sufficient evidence to find that multiple significant injuries to the victim occurred in Pennsylvania meeting the necessary elements of the crimes charged. Appellant's defense to the allegations was not that they occurred in Ohio and therefore she was not guilty, but rather that she did not commit the crimes of which she was charged, including causing the six (6) fractures that pre-dated the spiral fracture diagnosis on August 19, 2017. Appellant's jurisdiction claim

overlooks the fact that at least six (6) fractures were inflicted on the child when the Appellant resided in Beaver County and that there was evidence that the spiral fracture was also inflicted in Beaver County. The jurisdiction argument raised by the Appellant seems to arise out of a reference to an observation in another state, Ohio, where the Appellant noticed that the child's arm already appeared to be broken. This observation under the circumstances of this case does not support the necessity for a jury instruction with regards to jurisdiction in this case.

For the reasons, Appellant's issues of error with regards to jurisdiction are without merit.

## Sufficiency/Weight of the Evidence

The standard of review for evaluating a sufficiency of the evidence claim is well-settled.

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Further, the trier of fact is free to believe all, part, or none of the evidence.

**Commonwealth v. Jordan**, 2019 PA Super 173 (Pa. Super. Ct. May 29, 2019)(citations omitted). "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." **Commonwealth v. Colon-Plaza**, 136 A.3d 521, 525–26 (Pa. Super. 2016). It is within the province of the fact-finder to determine

the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. **Commonwealth v. Tejada**, 107 A.3d 788, 792–93 (Pa. Super. 2015).

## Location of Occurrence

Appellant first alleges that her conviction for all five (5) charges should be reversed because the Commonwealth failed to present sufficient evidence that the spiral fracture, and therefore all fractures, of the victim was and were caused by the Appellant within the Commonwealth of Pennsylvania. Appellant then alleges that the finding that Appellant caused the spiral fracture, and therefore all fractures, of the victim within the Commonwealth of Pennsylvania is against the weight of the evidence presented by the Commonwealth.

The standard of review for challenges to the sufficiency of the evidence is well-settled law. **See, e.g., Commonwealth v. DiStefano**, 782 A.2d 574, 582 (Pa. Super. 2001). The standard applied is "whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." **Id.** at 582 (**citing Commonwealth v. Williams**, 650 A.2d 420, 424 (Pa. 1994)). When applying this test, the court "may not weigh the evidence and substitute [its] judgment for the fact-finder." **DiStevano**, 782 A.2d at 582. Additionally, the facts and circumstances established by the Commonwealth "need not preclude every possibility of innocence." **Id.** Notably, in making a determination, "the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the

evidence." **Commonwealth v. Gooding**, 818 A.2d 546, 549 (Pa. Super. 2003)(internal citations omitted). Similarly, a verdict is against the weight of the evidence "only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice." **Id.** at 551. That is not the case here.

Here, the jury clearly had sufficient evidence to find Appellant guilty of all five (5) Counts charged in the Criminal Information. At trial, the jury heard testimony from three (3) BCCYS caseworkers and a medical expert, Dr. Jennifer Clarke, M.D.

Dr. Clarke, who testified as an expert in Child Abuse Pediatrics and was the attending physician to the victim, five-month-old A.C., testified that she examined the infant and discovered that he had seven (7) separate factures in his arms and legs, the most recent of which was the spiral fracture to his left arm, which prompted Appellant to bring the victim to the hospital.[57] The most recent injury, occurring sometime in the preceding seventy-two (72) hours from the time of her examination on August 19, 2017, was a spiral facture of the left upper arm.[58] The remaining six (6) fractures occurred between five (5) days to two (2) weeks prior to the time the x-rays were taken on August 19, 2017.[59] The earliest that the older six (6) fractures could have occurred was on August 14, 2017.[60] Dr. Clarke testified that the fractures would have been caused by a twist and pulling action, and would have been outside the standard of normal care.[61] She further testified that the injuries would not be caused by a fall, and that Appellant's

---

[57] T.T.III, pp. 7-74.
[58] Id. at 28.
[59] Id. at 57-59.
[60] Id. at 60.
[61] Id. at 29 -32.

explanation as to the cause of the most recent fracture was not a plausible explanation for the cause of the injury.[62] Dr. Clarke testified that the victim did not have any medical conditions that would explain the injuries.[63] Dr. Clarke testified that the injuries sustained by the victim were the result of abuse.[64]

Additionally, the Commonwealth presented testimony from several Children and Youth Services caseworkers who had worked on the case. BCCYS caseworker, Denise Dymond testified that the Appellant stated she lived in New Brighton during the entire lifetime of the victim and that she was the sole caregiver to the victim.[65] All the BCCYS caseworkers testified that Appellant was repeatedly asked if anyone else was ever a caregiver for the children.[66] Appellant's response remained the same that she was the only caregiver for the victim and no one else ever cared for the victim.[67]

## Aggravated Assault

Under **18 Pa. C.S. § 2702 (a)(1)**, "[a] person is guilty of aggravated assault if he ... attempts to cause serious bodily injury to another, or causes such injury, intentionally, knowingly, or recklessly under circumstances manifesting an extreme indifference to the value of human life." **18 Pa.C.S. § 2702(a)(1)**. The term "serious bodily injury" is defined by statute as "bodily injury which creates a substantial risk of death or **which**

---

[62] Id.
[63] Id. at 45-47.
[64] Id. at 51.
[65] T.T., Vol. II, pp 249-250.
[66] Id. at 147-148, 195, 249-250, 260, 268.
[67] Id.

causes serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." **18 Pa.C.S. § 2301** (emphasis added).

In order to determine whether an Appellant possessed the requisite intent, this Court will look at both direct and circumstantial evidence. **Commonwealth v. Alford,** 880 A.2d 666, 670-671 (Pa. Super. 2005). "In determining whether intent was proven from such circumstances, the fact finder is free to conclude the accused intended the natural and probable consequence of his actions to result therefrom." **Commonwealth v. Bradley,** 69 A.3d 253, 257 (Pa. Super. 2003). Among factors which are probative of the Appellant's intent is the relative size of the victim and the Appellant. **Id.** This Appellant was an adult woman and the victim was a five-month-old infant. The Commonwealth provided medical testimony that the injuries sustained by the victim were caused by the twisting and/or pulling on the extremities of the victim. Accordingly, the jury properly inferred that the Appellant intended that such fractures would occur. **See, Commonwealth v. Burton,** 2 A.3d 598, 603 (Pa. Super. 2010)(holding that Commonwealth proved intent to cause serious bodily injury when a Appellant struck an older, smaller victim in the head).

Additionally, the Commonwealth also provided sufficient evidence under the reckless *mens rea* standard of aggravated assault. The Appellant's actions clearly demonstrated a level of malice which is required to prove aggravated assault. **See, Commonwealth v. Bruce,** 916 A.2d 657, 664 (Pa. Super. 2007). The Pennsylvania Superior Court has determined that "malice exists where there is a wickedness of

disposition, hardness or heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured." **Commonwealth v. Kling**, 731 A.2d 145, 147-48 (Pa. Super. 1999). The Appellant in this case consciously ignored the high risks of injury when she twisted and pulled the victim's extremities causing the multiple fractures to the victim's bones.

Dr. Clarke testified that she examined the infant and discovered not only the injury that brought the child to the emergency department on that particular date, but also seven separate fractures in his arms and legs. Furthermore, Dr. Clarke testified with regards to the other six fractures that were found in all of the victims arms and legs that had occurred prior to the spiral fracture to the victim's upper left arm, and stated that these injuries were also outside the standard of normal care.

In a case that is similar to the instant case, the Pennsylvania Supreme Court stated:

> In this jurisdiction we have held that where an adult is given sole custody of a child of tender years for a period of time, and, during that time the child sustains injuries which may have been caused by a criminal agency, the finder of fact may examine any explanation offered and, if they find that explanation to be wanting, they may reject it and find the person having custody of the child responsible for the wounds.

**Commonwealth v. Paquette**, 451 Pa. 250, 301 A.2d 837 (1973). Thus, by virtue of the holding in **Paquette** the Supreme Court approved an inference that injuries inflicted upon a child left in the sole custody of an adult were inflicted by that adult, under circumstances where the evidence negates accidental or self-inflicted trauma.

Based on the totality of the evidence, it is clear that the Commonwealth established that Appellant, who was the sole person in custody and control of the victim,

caused the alleged seven fractures to victim over the course of his short life. Based on the victim's age and abilities, the Commonwealth established that the victim did not accidently or inadvertently cause the seven fractures to his own extremities. The Appellant's own statements to the caseworkers and Dr. Clarke established that she was the only one with the means and access to the victim.

The evidence establishes that the injuries sustained by the the victim were inflicted in the Commonwealth of Pennsylvania in Beaver County. The injuries caused ongoing loss or impairment to the function of the child's lower extremities which has caused a delay in walking and imposed the necessity for physical and occupational therapy to date.

For the foregoing reasons, Appellant's alleged error is without merit.


## Endangering the Welfare of Children

The elements for Endangering the Welfare of Children are that "[a] parent, guardian, or other person supervising the welfare of a child under 18 years of age ... commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection, or support." **18 Pa. C.S.A. § 4304(a)(1).** The crime of Endangering the Welfare of a Child is a specific intent offense. The intent element under section 4304 is a knowing violation of a duty of care. **See, Commonwealth v. Cardwell,** 357 Pa.Super. 38, 515 A.2d 311, 313 (1986). Although the offense is generally graded as a first-degree misdemeanor, it may be increased to a third-degree felony if the jury finds

"there is a course of conduct of endangering the welfare of a child[.]" **18 Pa.C.S. § 4304(b)** (2006, Nov. 29, P.L. 1581, No. 179, § 1).

The Pennsylvania Courts have established a three-part test for determining whether the elements of Endangering the Welfare of Children have been met:

(1) The accused was aware of his duty to protect the child; (2) the accused was aware that the child was in circumstances that could threaten the child's physical or psychological welfare; and (3) the accused has either failed to act or has taken action so lame or meager that such actions cannot reasonably be expected to protect the child.

**Commonwealth v. Bryant**, 57 A.3d 191, 197 (Pa. Super. 2012)(citations omitted).

In the instant case the Commonwealth proved all three elements of endangering the welfare of children beyond a reasonable doubt. The record indicates that Appellant was the sole caregiver of the victim, that the Appellant violated her duty to the victim when she inflicted the injuries on the child by caring for the child in a way that was outside the standard of normal care and thereby placed the victim in circumstances that could have endangered his physical and psychological wellbeing. Therefore, the Commonwealth has sufficiently proven, beyond a reasonable doubt, the elements required to warrant the conviction of Endangering the Welfare of Children.

### Simple Assault

Under **18 Pa.C.S. § 2701(a)(1)**, "a person is guilty of assault if he … attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another." **18 Pa.C.S. § 2701(a)(1)**.

As previously stated, the testimony and evidence provided that the victim suffered bodily injury, specifically seven (7) fractures to all extremities that were all in various stages of the healing process and that the fractures occurred within the Commonwealth of Pennsylvania.

## Recklessly Endangering Another Person

Under **18 Pa.C.S. § 2705**, "[a] person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." **18 Pa.C.S. § 2705.**

The evidence and testimony support the jury's verdict finding that Appellant's conduct was outside the standard of care and that the injuries could not have occurred accidentally. The actions of the Appellant of caring for the child in a means that was clearly outside the standard of care required placed the victim in danger of serious bodily injury, which in the instant case, the jury determined actually occurred. Based on the decision in **Paquette, supra,** the jury could infer that the injuries sustained by the child while he was in the care of the Appellant were caused by the Appellant.

Based on this evidence, the jury rendered a verdict finding that Appellant caused the injuries to A.C. This verdict was supported by the medical testimony and evidence, along with testimony from the additional witnesses at trial. The jury assessed the credibility of all the witnesses and found the evidence was sufficient to support the conclusion that the injuries were non-accidental and was caused by the Appellant. Likewise, the verdict is also not against the weight of the evidence. The verdict shows

that the jury found the Commonwealth's witnesses more compelling, and that the testimony, on its own, supports the conviction finding Appellant's actions cause the victim's injuries.

Therefore, after reviewing the evidence at trial in the light most favorable to the Commonwealth, the verdict winner here, this Court finds that there is sufficient evidence to find Appellant's actions to be the cause of the victim's injuries and to sustain convictions on all counts of the Criminal Information. Similarly, this conviction does not "shock one's sense of justice" and is not against the weight of the evidence presented. Thus, Appellant's alleged errors are without merit.

## Evidence of Date of Occurrence

Appellant alleges that the judgment should be arrested because there is insufficient evidence to support that any of the Counts occurred between the dates of August 17-19, 2017, as stated in the Criminal Information. However, the Criminal Information clearly states that the allegations occurred "on or about" the timeframe indicated. Additionally, the Medical Expert testimony of Dr. Clarke clearly established that the most recent injury did in fact occur during this time frame. Furthermore, the date of the injury is not an essential element that must be proved by the Commonwealth to establish reasonable doubt. This particular issue was addressed during the jury instructions, specifically **Pa. SSJI (Crim), § 3.19**, was read at trial. During trial the court read the following instruction:

> Ladies and gentlemen, I must, the information in this case alleges that the crime was committed on August 19, 2017. You are not bound by the date

alleged in the information. It is not in the central element of the crime charged. You may find the Appellant guilty, guilty if you are satisfied beyond a reasonable doubt that she committed the crimes charged in and around the date charged in the information even though you are not satisfied that she committed it on the particular date alleged in the information.

[T.T.-V3: 84].

This instruction specifically advises the jury that they are not to rely on the dates alleged and that they are free to find the Appellant guilty of the crime charged if they are satisfied, beyond a reasonable doubt, that the Appellant committed the crime charged on or about the date charged even if they are not satisfied that the Appellant committed on the particular date alleged.

It is well settled that the date of the commission of the offense must be fixed with reasonable certainty. **Commonwealth v. Devlin**, 460 Pa. 508, 512, 333 A, 2d 888, 890 (1975). The Rules of Criminal Procedure require that the Criminal Information include the date when the offense is alleged to have been committed, if the precise date is known, and the day of the week if it is an essential element of the offense charged, provided that if the precise date is not known or if the offense is a continuing one, an allegation that it was committed on or about any date within the period fixed by the statute of limitations shall be sufficient. **Pa.R.Crim.P. Rule 560(B)(3). See also, Commonwealth v. Brooks,** 7 A.2d 852 (Pa.Super.2010)("Case law has further established that the Commonwealth must be afforded broad latitude when attempting to fix the date of offenses which involve a continuous course of conduct.")(internal citation omitted). Such was the case here.

For the foregoing reasons, Appellant's allegations are without merit.

## ALLEGED TRIAL ERRORS

### Testimony of Denise Dymond (BCCYS Caseworker)

Appellant alleges "[this Court] erred in admitting over Appellant's objection testimony from Denise Dymond, a caseworker from BCCYS, that BCCYS recommended that the victim and his sister be immediately removed from the care of the Appellant on August 16, 2017, and placed together in foster care, thereby injecting prejudicial non-prosecutorial governmental action against Appellant in removing them from her care."[68]

During the trial, the Court and Counsel for both parties held a side bar discussion regarding the testimony of Ms. Dymond.[69] The Court limited the information that was admissible by the Commonwealth pursuant to Appellant's Objection just to testimony that the children remained together after they were removed from Appellant's care and no additional injuries occurred while the children were residing together. The Court determined this to be relevant as the Appellant repeatedly stated to caseworkers and Dr. Clarke that the injuries to the victim were caused by the sibling of the victim, and that evidence that the siblings remained together without incident was relevant. Although, this testimony may have been prejudicial to the Appellant, the probative value of this evidence is not outweighed by unfair prejudice to the Appellant. **Pa. R. Evid. 403.**

After the sidebar was held and questioning resumed, the Commonwealth asked the following questions of the witness, Ms. Dymond:

BY MS. REED STRATHMAN:

---

[68] Appellant's Superseding Supplemental Omnibus Post-Sentence Application *Nunc Pro Tunc*, Motion for New Trial, ¶ 13.

[69] T.T., Vol. II at 212-215.

**Q.** Now, was one of the recommendations that you made that the children stay in foster care?

**A. Yes.**

**Q.** And was one of those recommendations that they do not return home to Miss Gotell?

**A. Yes**

**Q.** Okay. And that they remain in the foster home together, Amazing and August together?

**A. Yes.**

[T.T., Vol. II at 215-216].

Appellant did not object to this line of questioning notwithstanding the Court's limiting instructions during the side bar discussion on the record. The Supreme Court has stated:

> [I]t is axiomatic that issues are preserved when objections are made timely to the error or offense. **See Commonwealth v. May**, 887 A.2d 750, 761 (Pa 205) (holding that an "absence of contemporaneous objections renders" and appellant's claim waived); and **Commonwealth v. Bruce**, 916 A.2d 657, 671 (Pa. Super. 2007), **appeal denied**, [] 932 A.2d 74 (Pa. 2007) (holding that a "failure to offer a timely and specific objection results in waiver of" the claim). Therefore, we shall consider any issue waived where Appellant failed to assert a timely objection.

**Commonwealth v. Baumhammers**, 960 A.2d 59, 73 (Pa. 2008).

Therefore, any objection to this line of question is deemed waived.

Appellant also alleges that "[the Court] erred in admitting over Appellant's objection testimony from [Ms. Dymond] of her opinion that Appellant was inattentive to the victim during her visit with them at the hospital, thereby injecting prejudicial non-

prosecutorial governmental post-actionable conduct opinion of Appellant being unfit to care for her children."[70]

Ms. Dymond testified as follows:

**Q.** Now, after you give the case to Amy Frederick do you have any further interaction with Miss Gotell or the children?

**A. No.**

**Q.** And when you were interacting with them did you ever observe the children at all?

**A. Only the initial date of placement and the supervised visit that I completed the day of the shelter hearing.**

**Q.** Anything noteworthy from either of those interactions about either children?

**A. The initial date placement when I met with Miss Gotell at the hospital she wasn't very attentive to August. She, there was a time where he had –**

[T.T., Vol. II, at 218-19]

Appellant objected to the relevance of the testimony. In determining the admissibility of evidence, the trial court must decide whether the evidence is relevant and, if so, whether it's probative value outweighs its prejudicial effect. **Commonwealth v. Crews,** 536 Pa. 508, 640 A.2d 395 (1994); **see, e.g., Commonwealth v. Dollman,** 518 Pa. 86, 541 A.2d 319 (1988). "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact."

---

[70] Appellant's Superseding Supplemental Omnibus Post-Sentence Application *Nunc Pro Tunc*, Motion for New Trial, ¶ 14.

**Commonwealth v. Spiewak**, 533 Pa. 1, 8, 617 A.2d 696, 699 (1992). Evidence that merely *advances an inference* of a material fact may be admissible, even where the inference to be drawn stems only from human experience. **See, e.g., Dollman, Supra.** In this instance, the court determined that this testimony was relevant as the Appellant's ability to care for the children was clearly probative as to whether the Appellant acted towards the victim in a manner that was within the standard of normal care, which is an element of the Endangering the Welfare of Children charge.

Appellant next alleges that "[the Court] erred in authorizing [Ms. Dymond] to read the entire (or any of the) contents of her written Contact Summary Form after a shelter hearing of Appellant's admissions to her, including the fact that she was receiving public assistance benefits, without any foundation of [Ms. Dymond's] lack of memory. Appellant's objection is based on **Pa. R. Evid. 803.1(3)** and the claim is that this evidence injected a prejudicial inference of poverty, furthering the non-prosecutorial governmental post-actionable conduct opinion of Appellant being unfit to care for her children."[71]

During the trial, Appellant limited the objection to only the form of the question.[72] The objection was overruled based on form.[73]

---

[71] Appellant's Superseding Supplemental Omnibus Post-Sentence Application *Nunc Pro Tunc*, Motion for New Trial, ¶ 15.

[72] Q. I'm going to show you the Contact Summary from August 24, 2017 after the shelter hearing?
A. **Okay.**
Q. Are you the one that actually writes this?
A. **Yes, I am.**
Q. This paragraph right here, could you just read us the entire paragraph of what your notes were from that day?
A. **Okay.**
MR. BENYO: Objection as to the question, Your Honor.
THE COURT: Is that a form that, that's a form that you referenced?

Finally, Appellant alleges that "[the Court] erred in overruling the Commonwealth's objection to Appellant eliciting testimony from [Ms. Dymond] of admissions made by Antonio Campbell, the natural father of the victim, of his contact, including exclusive contact, with the victim during the victim's life, which Appellant contends were exceptions to the hearsay rule as declarations against penal interest, given under circumstances under **Pa. R. Evid. 804 (b)(3)**."[74] The Court is going to infer the Appellant is referring to the Court sustaining the Commonwealth's objection as opposed to overruling the objection as stated in Appellant's Motion.

When determining if **Pa. R. Evid. 804** is applicable it must be first determined that the declarant is "unavailable" under **Pa. R. Evid. 804(a)**, which states, in pertinent part:

> A declarant is considered to be unavailable as a witness if the declarant:
> (1) is exempted from testifying about the subject matter of the declarant's statement because the court rules that a privilege applies;
> (2) refuses to testify about the subject matter despite a court order to do so;
> (3) testifies to not remembering the subject matter, except as provided in **Rule 803.1(4)**;
> (4) cannot be present or testify at the trial or hearing because of death or a then-existing infirmity, physical illness, or mental illness; or
> (5) is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure:
> (A) the declarant's attendance, in the case of a hearsay exception under Rule 804(b)(1) or (6); or
> (B) the declarant's attendance or testimony, in the case of a hearsay exception under Rule 804(b)(2), (3), or (4).

---

MR. BENYO: As to the form of the question. Just asking someone to read something is not a question, Your Honor. There has to be a question that is asked. If the witness is unable to answer, then she can be refreshed --
THE COURT: That's overruled. It was a form that you referenced.
[T.T., Vol. II at 249]
[73] Id.
[74] Appellant's Superseding Supplemental Omnibus Post-Sentence Application *Nunc Pro Tunc*, Motion for New Trial, ¶ 16.

But this paragraph (a) does not apply if the statement's proponent procured or wrongfully caused the declarant's unavailability as a witness in order to prevent the declarant from attending or testifying.

**Pa. R. Evid. 804(a).**

The test for availability under the Sixth Amendment is broad: a witness is unavailable if the prosecution has made a good faith effort to introduce its evidence through the live testimony of the witness and, through no fault of its own, is prevented from doing so. **Ohio v. Roberts**, 448 U.S. 56, 74 (1980)(the "ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness"); **California v. Green**, 399 U.S. 149 (1970)(although physically present in the courtroom, witness was unavailable for Sixth Amendment purposes when the State made every effort to introduce its live testimony through its witness but witness claimed lack of memory); **Commonwealth v. Jones**, 496 A.2d 177, 1182 (Pa. Super. 1985)("true test of unavailability is the unavailability of the witness's testimony, not his or her person"); **Commonwealth v. Rodgers**, 372 A.2d 771 (Pa. 1977)(witness is unavailable if he invokes the privilege against self-incrimination). The first step in invoking the exception to the hearsay rule is determining that the witness in indeed unavailable.

In the instant case, the declarant, Antonio Campbell, was available at the time the Appellant attempted to elicit the testimony of Ms. Dymond with regards to the comments made to her by Mr. Campbell. In fact, Mr. Campbell was subpoenaed to testify and scheduled to testify the following day on behalf of the Appellant. Mr. Campbell's

appearance in court to testify would have permitted Appellant to question Mr. Campbell with regards to the comments he made to Ms. Dymond, and it was not until the following day when Mr. Campbell was called to testify that he invoked his privilege against self-incrimination, and could then have been held as an unavailable witness under **Pa. R. Evid. 804**. At that time, Appellant could have attempted to elicit additional testimony of Ms. Dymond or attempt to enter the document into evidence containing Mr. Campbell's comments. However, Appellant never attempted to recall Ms. Dymond nor did she ever attempt to enter the statements contained in any report authored by Ms. Dymond containing Mr. Campbell statements as evidence under **Pa. R. Evid. 804**.

For the above reasons, there was not any error on the part of this Court in sustaining Appellant's Objection at the time it was made.

For the reasons stated above, Appellant's alleged trial errors are without merit.

## CONCLUSION

For the reasons stated above, this Court respectfully submits that the allegations of error in this case are without merit and therefore the decision of this Court should be affirmed. The Beaver County Clerk of Courts is hereby directed to file the record of these proceedings with the Superior Court of Pennsylvania. An appropriate Order shall follow.

Respectfully Submitted,

_____ J